## Luther A. Murff v. The State.

No. 3271.   Decided November 25, 1914.

Rehearing granted December 23, 1914.

**1.—Perjury—Indictment—Precedent.**

Where, upon trial of perjury, the indictment followed approved precedent and was in full accord with the statute, the same was sufficient. Davidson, Judge, dissenting.

**2.—Same—Indictment—Death Penalty—Perjury—Statutes Construed.**

Upon trial of perjury, it is not necessary for the indictment to allege the result of the prosecution against the defendant in the original capital case in which defendant testified, as under article 311, Penal Code, defendant did not suffer the death penalty, but was acquitted.

**3.—Same—Indictment—Unintelligible—Record—Presumption.**

In the absence of a bill of exceptions presenting how the indictment was unintelligible, etc., the same can not be considered on appeal, and this court must assume that the court below ruled correctly in refusing to quash the indictment on this ground.

**4.—Same—Indictment—Oath Administered—Deputy Clerk.**

A motion to quash the indictment, on the ground that the same alleged that the oath administered to the defendant in the trial in which the alleged perjury arose was by the deputy clerk of that court, and that there is no such officer known to the law who is authorized to administer an oath, is untenable and is correctly overruled.

**5.—Same—Term of Court—Indictment.**

In an indictment for perjury, it was wholly unnecessary to allege specifically at what term of the court the case was tried in which the alleged perjury occurred; besides, this was alleged.

**6.—Same—Indictment—Date of Offense—Limitation.**

There was no error in overruling a motion to quash the indictment for perjury because the indictment upon which defendant was tried for rape charged that offense to have occurred on January 19, 1913, and the statements attributed to and charged against the defendant as the basis of perjury was alleged to have been made by him in regard to a transaction occurring about February 13, 1913; as the proof is never limited to the particular day on which the offense is alleged to have been committed, as long as it is not barred by limitation.

**7.—Same—Indictment—Materiality of Testimony.**

Where the indictment for perjury specifically alleged that each of the statements made by and attributed to defendant was material to the cause then upon trial, a complaint that it did not do so and a motion to quash on that ground was correctly overruled. Davidson, Judge, dissenting.

**8.—Same—Former Jeopardy, Plea of—Demurrer—Practice.**

Where defendant was tried for rape and acquitted, and a portion of the elements of that offense was that he had carnal intercourse with a female under the age of consent, and was afterwards charged with perjury in said rape case, where the question of the age of the female in the rape case was not an issue, and the acts which constituted the offense for which the former acquittal was had were not the very acts which constitute the offense of perjury in the instant case, and the two indictments were so diverse as to preclude the same evidence from sustaining both, and the evidence which was required to support the second indictment would not have been sufficient to secure a legal conviction upon the first indictment, there was no error in sustaining a demurrer to defendant's plea of former jeopardy. Following Kain v. State, 16 Texas Crim. App., 282, and other cases. Davidson, Judge, dissenting.

**9.—Same—Rape—Perjury—Former Jeopardy.**

Where, upon trial of perjury, defendant filed a plea of former jeopardy on the ground that he had been tried and acquitted for rape, and that, therefore, he could not thereafter be tried for perjury committed by him on that trial, the same was correctly stricken out on motion of the State. Following Miles v. State, 73 Texas Crim. Rep., 493, and other cases. Davidson, Judge, dissenting.

**10.—Same—Bills of Exception—Granting Extension—Notice of Appeal—Jurisdiction—Nunc Pro Tunc.**

While it is generally the rule that notice of appeal suspends and arrests all proceedings in the trial court, yet where the judge had granted an order and entered it upon his docket allowing defendant thirty days additional time from that allowed by law to file bills of exception, which by mistake or oversight of the clerk was not entered on the minutes of the court, and in view of article 845, Revised Code Criminal Procedure, giving the trial court power and authority both in term time and in vacation to extend the time for filing bills of exception for not longer than ninety days after adjournment, or after sentence, where the court continued in session longer than eight weeks, the order of the trial court could have been entered nunc pro tunc, and the bills of exception will be considered by this court. A different question might arise where no order extending time of filing has been made.

**11.—Same—Continuance—Want of Diligence—Discretion of Court.**

Where, upon trial of perjury, the application for a continuance showed a want of diligence, and that one of the absent witnesses was probably absent by the consent or procurement of the defendant, there was no error in overruling same. See opinion for discussion of application for continuance which is always addressed to the sound discretion of the court.

**12.—Same—Stenographer's Transcript of Evidence—Words and Phrases.**

Where, upon trial of perjury, the State was permitted to introduce the court stenographer who took down defendant's testimony in the rape case in which he was alleged to have committed perjury, and permitted the stenographer to identify his transcript of questions and answers, and a controversy arose over the use of the word "back" by defendant as a witness in the rape case, there was no error in not postponing the trial for perjury and permitting defendant to get the twelve jurors in the rape case to testify on that point; the court having heard other testimony thereon, and there being no showing in the motion for new trial that any of the jurors would testify that defendant did not use said word.

**13.—Same—Evidence—Deputy Clerk.**

Upon trial for perjury, the deputy clerk could testify that he was such official without producing his appointment, etc.

**14.—Same—Evidence—Indictment.**

Upon trial for perjury, the court properly permitted the clerk to produce and identify the indictment in the case in which the alleged perjury occurred,

and also to permit the trial judge to testify that he presided at said trial and that defendant was arraigned and pleaded not guilty.

**15.—Same—Evidence—General Reputation.**

Where, upon trial of perjury, the defendant introduced several witnesses to prove up his general reputation for truth and veracity, whereupon the State's counsel upon cross-examination propounded some irrelevant questions to which the court promptly sustained objections, there was no reversible error.

**16.—Same—Evidence—Impeaching Testimony—Rule Stated.**

It is well settled in this State that any witness can be impeached by showing a conviction within a reasonable time for any felony, or even any misdemeanor involving moral turpitude, but in no event can testimony be introduced to prove guilt, or specific acts, for any such purpose.

**17.—Same—Evidence—Husband and Wife—Cross-examination.**

Where, upon trial of perjury, defendant introduced his wife as a witness, whereupon the State, on cross-examination, went to such an extent as to go beyond the questions asked her in the examination in chief, to which objections were made, whereupon the cross-examination was stopped and the testimony withdrawn, which was not material, there was no reversible error. Following Miller v. State, 31 Texas Crim. Rep., 609, and other cases.

**18.—Same—Evidence—Confessions—Statutes Construed.**

Where, upon trial of perjury growing out of defendant's testimony in a previous trial for rape in which defendant was acquitted, the court admitted in evidence a confession of defendant while under arrest for the rape case admitting that he had carnal intercourse with the female with her consent, and which confession was not in writing and defendant had not been warned as required by law under article 810, Code Criminal Procedure, that the statement might be used as evidence against him, the same was reversible error. Prendergast, Presiding Judge, dissenting.

**19.—Same—Rule Stated—Confessions.**

The plain letter of the statute renders inadmissible the confessions of the defendant about the crime for which he is then under arrest in any case for which he may thereafter be tried, unless the same are made in writing after due warning as required by law; but not statements made by him about matters for which he is not then under arrest about offenses not then committed. Qualifying Rheinhardt v. State, 52 Texas Crim. Rep., 59. Distinguishing Mathis v. State, 39 Texas Crim. Rep., 549; Davis v. State, 19 Texas Crim. App., 201. Prendergast, Presiding Judge, dissenting.

**20.—Same—Rule Stated—Confessions.**

This court has held that such testimony is inadmissible in behalf of a defendant because the statute said the person making the statement was an incompetent witness at the time he made the statement, and if he is incompetent under the statute, such testimony is incompetent also in behalf of the State by virtue of the statute, unless the confession comes within the exceptions named in the statute. Following Milner v. State, 75 Texas Crim. Rep., 22, 169 S. W. Rep., 899, and other cases. Prendergast, Presiding Judge, dissenting.

Appeal from the Criminal District Court of Dallas. Tried below before the Hon. Robt. B. Seay.

Appeal from a conviction of perjury; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Jno. C. Adams* and *E. T. Branch,* for appellant.—On question of admitting confessions of defendant: Taylor v. State, 3 Texas Crim. App.,

397; Grosse v. State, 11 id., 364; Davis v. State, 19 id., 201; Neiderluck v. State, 21 id., 320; Robinson v. State, 55 Texas Crim. Rep., 42.

On question of former jeopardy: Coffey v. U. S., 116 U. S., 436, and cases cited in opinion.

On question of insufficiency of indictment: Winn v. State, 60 Texas Crim. Rep., 660; McCoy v. State, 43 id., 606; Maddox v. State, 28 Texas Crim. App., 533; Weaver v. State, 34 Texas Crim. Rep., 554; Anderson v. State, 24 Texas Crim. App., 705; Mattingly v. State, 8 Texas Crim. App., 345; Moss v. State, 47 Texas Crim. Rep., 459.

*C. E. Lane,* Assistant Attorney General, for the State.

PRENDERGAST, Presiding Judge.—Appellant was convicted of perjury and the lowest penalty assessed against him.

The indictment herein was filed January 17, 1914. It charged perjury in two counts. The first was not submitted. He was tried alone under the second. It charged the perjury to have been committed on May 30, 1913, in a trial wherein he was a witness in his own behalf in which he was charged with rape on Viola Johnson, alleged to have been committed on or about January 19, 1913. This count is quite lengthy,— more than five typewritten pages. It is unnecessary to copy it. The allegations thereof are fully in accordance with the statute, the standard forms therefor under the statutes, and the many decisions of this court.

Appellant made a motion to quash the second count on these grounds:

First. Because it "fails to allege the result of the prosecution against the defendant in the original capital case in which said witness was alleged to have been a witness and to have testified falsely, for that if his said testimony had been injurious to the defendant, and said defendant had had assessed against him the punishment of death, then and in that event the punishment in this case would have been death, and defendant in this case would be entitled to a special venire from which to select a jury to try him." The mere statement of this ground of the motion shows that it is not well taken. The statute (art. 311, P. C.) is: "When the perjury is committed on a trial of a capital felony, and the person guilty of such perjury has, on the trial of such felony, sworn falsely to a material fact tending to produce a conviction; and the person so accused of the capital felony is convicted *and suffers the penalty of death,* the punishment of the perjury so committed shall be death." In every other event the punishment for perjury is imprisonment in the penitentiary for not less than two nor more than ten years. (Art. 310.)

Of course appellant had not suffered death. In no other case is it necessary to allege the result of the trial of a case in which the perjury is committed as it is wholly immaterial whether that trial results in conviction or acquittal. It could have no effect on the perjury committed on the trial thereof.

Second. That the indictment had been so changed, blotted, smeared

and interlined since its original draft that it is unintelligible and, therefore, should be quashed.

Not one of these things appear in the copy in the record. There is no bill in any way presenting the matter, and, of course, this court can not assume that the motion states the facts. On the contrary, we must and do assume that the lower court acted correctly in not quashing the indictment on this ground.

Third. Because the indictment alleges that the oath administered to him in the trial of the rape case was by the deputy clerk of that court, and, he claims, there is no such officer known to the law who is authorized to administer an oath in any proceeding, judicial or otherwise.

The statutes, both civil and criminal, are the reverse of this ground of appellant's motion. It is perfectly useless to cite them.

Fourth. That the indictment does not allege specifically at what term of the court the rape case was tried. This was wholly unnecessary. The indictment does allege the specific date on which the case was tried, and the perjury was committed, and that it was during the term of the court in which the rape case was tried.

Fifth. That the indictment charges no offense because in the charging part it undertakes to set out that he was charged by indictment with the offense of rape alleged to have been committed about January 19, 1913, and the statements attributed to and charged against him as the basis of perjury are confusing in that they charge statements alleged to have been made by him in regard to transactions occurring about February 13, 1913.

This presents no defect at all, for while the indictment in the rape case alleged that the rape was committed on or about January 19, 1913, clearly on the trial thereof evidence could be properly admitted that the offense was committed on that day or on February 13, 1913, or as for that matter, on both days. And his false testimony could have been given as it is alleged it was as to things which occurred and did not occur on both of those days. In offenses of that character the proof is never limited to the particular day on which the offense is alleged to have been committed. Any time prior to that within the statute of limitation and any time after that, before the filing of the indictment, may be proven.

Sixth. That the indictment fails to allege affirmatively that each of the statements made by or attributed to him was material to the cause then upon trial.

In this appellant is unquestionably mistaken. The indictment specifically is to the reverse of what he claims in this ground of his motion. The court correctly held that the indictment was good against each and all of appellant's said grounds to quash it.

He also complains that the court erred in sustaining the State's demurrer to his plea of jeopardy and res adjudicata.

In this plea appellant alleges that the State ought not to further prosecute him in this cause, because on February 22, 1913, in Criminal

District Court No. 2 of Dallas County, there was duly and legally presented and filed therein a valid indictment against him, charging him with the offense of rape, alleging therein that on January 19, 1913, he did ravish and have carnal knowledge of Viola Johnson, a female under fifteen years of age, not being his wife. To this plea he attached a properly certified copy of said indictment so averring. His plea further alleged that he was duly and legally tried upon the merits in said court by a jury on said indictment on May 31, 1913, and was there duly and legally acquitted of that offense. He also attached a duly certified copy of the judgment of acquittal. From the plea there is no question but that the appellant was the accused in said rape case; that the indictment was a valid one; that he had a due and legal trial of the case on its merits and was legally acquitted in that case.

The State filed a general demurrer to said plea and asked that the plea be stricken out and held for naught as it was insufficient in law and presented no defense to the indictment in this cause. The court sustained the State's demurrer and held, in effect, that the plea presented no valid defense in this case and overruled said plea.

The indictment in this case was not based on any allegation therein that appellant was guilty of the rape for which he had been so indicted and tried, nor does it allege that he was guilty of said rape, nor that he swore on said rape trial that he was not guilty of said rape, nor that he had not committed it. It makes no allegation on that subject. Nor did the court submit any such issue to the jury.

It is true the indictment did allege that the perjury committed by appellant was committed on the trial of the case against him for rape. The indictment herein based the perjury on each and all of the following alleged false statements made by appellant on the trial of his rape case, towit: "I was not in the Wilson Building on Main Street in the City and County of Dallas, Texas, on Sunday, January 19th, A. D. 1913. I did not go into my office at any time during the day of January 19, 1913. I did not have Viola Johnson in my office on the 19th day of January, 1913, at any time during that day. I did not touch her or put my hands upon Viola Johnson in said Dallas County, in the Wilson Building, on the 13th day of February, 1913. I did not, on the 13th day of February, 1913, in the Wilson Building, in the City and County of Dallas, lay Viola Johnson down on a coat and attempt to get down on her and unfasten some of her clothing and attempt to have carnal knowledge of her. I never had intercourse with the girl, Viola Johnson, in Dallas County, Texas, on January 19, 1913. I did not have carnal intercourse with Viola Johnson in Dallas County, Texas, on the 13th day of February, 1913. I did not put the said Viola Johnson down on a coat and try to have intercourse with her and hurt her until she was about to cry, because she was so small. I did not try to have carnal intercourse with Viola Johnson and did not go into another room and deposit semen in a cuspidor."

The court submitted only those statements to the jury for a finding, as the basis of perjury.

The indictment alleged specifically that appellant swore and made each and all of the said specific statements on his trial in the rape case, and also properly alleged that "said statements and each of them and every part thereof so made by the said Luther A. Murff were then and there in said court on the said trial material to the issue in said cause,"— said rape case.

The substance and effect of appellant's contention on this question is that as appellant was tried and acquitted of rape he could not thereafter be tried for perjury committed by him on that trial, for any subsequent trial for perjury would be putting him in jeopardy again for the same offense and any subsequent indictment and trial for perjury committed on the trial of the rape case would be res adjudicata in that he was acquitted of rape in the trial therefor.

Our Constitution (art. 1, sec. 14) says: "No person, for the same offense, shall be twice put in jeopardy of life or liberty; nor shall a person be again put upon trial for the same offense after a verdict of not guilty in a court of competent jurisdiction." The statute (art. 9, C. C. P.) copies this constitutional provision.

Our statute (art. 1063, P. C.) says, rape is the carnal knowledge of a female under the age of fifteen years, other than the wife of the person, with or without her consent and with or without the use of force, threats or fraud. The punishment therefor (art. 1069, P. C.) is by death or confinement in the penitentiary for life or for any term of years not less than five.

Our statute (art. 304, P. C.) defines perjury as a false statement, either written or verbal, deliberately and wilfully made, relating to something past or present, under the sanction of an oath, where such oath is legally administered, under circumstances in which an oath is required by law, or is necessary for the prosecution or defense of any private right, or for the ends of public justice.

The punishment therefor (art. 310, P. C.) is confinement in the penitentiary for not less than two years nor more than ten years.

These two offenses,—rape and perjury,—are as distinctly different as any other two offenses can be. Neither can be the other. A trial for one of these offenses can not put the accused in jeopardy of the other offense.

If appellant's contention was correct, then when an accused was tried for any offense, and he committed perjury on such trial, the mere trial itself would be perfect immunity for any perjury that he might commit on the trial thereof. This would be offering a high premium to everyone who is charged with crime to testify falsely on his trial so as to secure an acquittal, for if appellant's contention could be correct he could not commit perjury and could not be tried for any perjury he might commit in such trial. It would make no difference whether he was convicted or acquitted. He would be immune from perjury in either event. But the doctrine would be more monstrous if by his perjured testimony he secured an acquittal.

We can not, for one moment, hold such a doctrine. No such doc-

trine was meant by either our Constitution or statute, nor can the language or spirit of either be tortured into any such meaning. An accused has no more right to commit perjury on any trial wherein he is tried for an offense and testifies falsely and then go scott free, than any other witness.

An accused does not have to testify in any case wherein he is tried for any offense. If he does so, it is wholly voluntary on his part. But if he does, like every other witness, he must testify *"the truth,* the whole truth, *and nothing but the truth."* If instead, he "deliberately and wilfully" testifies falsely, and not "through inadvertence, or under agitation, or by mistake," he is guilty of perjury and should be punished therefor. There is no constitutional or statutory provision of our law which can be tortured into meaning that an accused shall be exempt from perjury because committed on his own trial. Surely, no criminal should be immune from perjury. Nor should anyone, even though unjustly indicted, for a crime by a grand jury, and tried, be so immune. It was orally argued by appellant's able attorney, when this case was submitted, that if he is subject to prosecution for perjury when he testifies on his trial when tried for crime, he would thereby in effect be precluded from testifying at all, fearing that even if he testified the truth he would be indicted for perjury. No such an absurd and violent supposition can be entertained. He can not be indicted except by a grand jury of twelve good and lawful men, who each swears "he will diligently inquire into and (only) true presentment make," and will "present (indict) no person from envy, hatred or malice," but "present things truly as they come to his knowledge," and if a grand jury did otherwise they, or at least nine of them, would swear falsely. It is also the duty of trial judges and prosecuting officers to protect the innocent, as well as prosecute and punish the guilty, and we can not and will not indulge such an unreasonable presumption that all, or any of these officials,—grand jurors, trial judges and prosecuting officers,— will violate their oaths and duty.

We are in no way advised by this record what evidence was introduced, or what witnesses testified, in the rape case, other than the fact that appellant himself testified therein, for his testimony in the rape case is reproduced in the trial in this case, but no other testimony is reproduced, so far as we are advised.

Of course, it was absolutely necessary to introduce additional testimony on the trial in the perjury case to that which was introduced on the rape case. Even if every word of the testimony on the rape case had been reproduced on the trial in the perjury case, it could not possibly have authorized the appellant's conviction in this perjury case. It was absolutely necessary in the perjury case, as stated, to introduce other and additional proof from what was introduced on the trial of the rape case.

It is true that as appellant was tried and acquitted for the alleged rape, he could not again be indicted nor tried for the same rape. But in this perjury case he was neither indicted nor tried for rape. He

was indicted and tried solely for perjury. It could very properly be held that he might have been innocent of the rape charged, and yet clearly and unquestionably guilty of perjury committed in the trial of the rape case.

In our opinion the court was unquestionably right in holding that appellant's plea in bar and of res adjudicata presented no defense in this case and in sustaining the State's demurrer striking out said plea. Miles v. State, 73 Texas Crim. Rep., 493, 165 S. W. Rep., 571.

The law prescribed a three months term for the trial court. The term at which this trial occurred convened on January 5th, continued in session and did not adjourn for that term until April 4, 1914. This trial began on February 18th, consuming several days before concluded. After conviction appellant made a motion for new trial, which was heard and overruled March 7, 1914, at which time appellant gave notice of appeal to this court; final judgment-sentence was then pronounced and the notice of appeal and sentence were on that day duly entered of record. At the time the motion for new trial was overruled, the trial judge granted and duly then entered on his docket an order allowing appellant thirty days additional time from that allowed by law to file bills of exception. By mistake and through an oversight the clerk failed to enter that part of said order granting said extension of time. This was not discovered until some fifty days thereafter. As soon as discovered by appellant's attorneys, they for him, made a motion to enter said order granting said extension *nunc pro tunc.* The court was then in session, that term beginning April 6, 1914. The State resisted said motion, claiming that because the order was not entered of record the court was without power then to enter such order because of the fact that notice of appeal had been given and entered of record and this court had exclusive jurisdiction. The court, however, heard the motion and the evidence thereon. It was clearly established that the order for the extension of time was made at the time the motion for new trial was overruled; that it was not entered by the clerk in the minutes through his mistake and oversight, and the discovery that it had not been so entered was not made until more than thirty days thereafter and until after the court had adjourned for that term.

The statute (art. 914, C. C. P.) provides that a defendant may appeal from a conviction at any time during the term at which he is convicted. The next article prescribes that such appeal is taken by giving notice in open court and having it entered of record. Then the next article states that the effect of such an appeal is to suspend and arrest all further proceedings in the trial court until the judgment of the appellate court is received by it, except it permits the lower court to have lost or destroyed papers or records substituted.

Under these articles this court has all the time held that the lower court could not amend or enter an order nunc pro tunc, unless authorized by some law to do so. Statements of facts and bills of exceptions were embraced thereby.

However, this court has always held that when the statute authorized

the lower court to make an order after appeal, that it could be done. In Mosher v. State, 62 Texas Crim. Rep., 42, this court gave a history of the legislation of this State as to filing of statements of facts and bills of exceptions in the court below. It is unnecessary to repeat that here. It is sufficient to say that for the first time, by the Act of May 1, 1909, page 274, section 7, was the lower court given power and authority, in both term time and vacation, to extend the time for filing statements of facts and bills of exceptions in appealed cases. This law was again amended by the Act of March 31, 1911, page 264, which, since then has been incorporated in, and is now and was when, and before, this case was tried, article 845 of our Revised Criminal Procedure. That article expressly gives the trial court power and authority, both in term time and in vacation, to extend the time for filing bills of exception for not longer than ninety days after the adjournment of court when the court can not hold eight weeks by law, and the same length of time from the final judgment-sentence when the court can continue under the law, longer than eight weeks. Under this express authority we think it was intended and should be held, as we do hold, that not only could such order be entered extending the time, but where a previous order had been made but had not been entered on the record, that the court can, within such time allowed, make an order entering nunc pro tunc the previously omitted order of extension. We are not passing on the question of whether or not the trial judge has power and authority after the term expires and the thirty days when no previous order of extension had been made, can then make any order of extension. That question does not arise in this case. So that the authorities relied upon by the State, holding that the lower court can make no order after appeal to this court are inapplicable. We will, therefore, consider the bills of exception herein.

There are some fifty-one bills. In most instances several of them are about the same subjects and can be discussed together. We do not take them up in the order in which they appear in the record, but rather chronologically.

The proof showed that on the trial of the rape case appellant testified to each of the statements made the basis of perjury, copied above. The testimony introduced by the State, if believed, and it evidently was, by the jury and lower court, was amply sufficient to show and did show that each of said statements was false; that neither of them were made through inadvertence or under agitation, or by mistake and were made by appellant at the time and place and under the circumstances alleged in the indictment.

The term of court at which this trial occurred convened January 5, 1914. The grand jury preferred the indictment and it was filed January 17, 1914. Evidently appellant was at once arrested. He made no application for process for witnesses until February 5th following. On that day he filed with the clerk an application for subpoenas for five witnesses, three of whom resided in the City of Dallas, where this court was sitting and the trial occurred. One other, Dr. Terrell, was

alleged to reside in Galveston, Texas. The other, Miss Antonette Jones, resided in Houston, Texas. The application for these witnesses was on two sheets of paper. The clerk issued the process for the first three but overlooked the names of Terrell and Miss Jones on the second sheet, and issued no process for either of them. The application applied for the process to be returned and the witness summoned to attend on February 16th. On that date the subpoena for the three Dallas witnesses was returned by the sheriff, showing that neither of them were summoned or could be found at the addresses given. No other process was applied for or issued for either of the Dallas witnesses and no effort whatever was shown to have been afterwards made to secure their attendance. The diligence as to them was, without doubt, insufficient to entitle him to a continuance. Besides, their testimony became wholly immaterial if it at all had been admissible. The case was called for trial on February 16th. The appellant then filed his application for a first continuance. As shown, no process had been issued for Terrell or Miss Jones and, of course, none served. Appellant neither applied for nor had any other process issued for either of them. The court granted a first application for a continuance to the extent of resetting the case two days later and the trial judge himself had process issued to Galveston and Harris Counties, respectively, for said witnesses, Terrell and Miss Jones. That process was not served and no other process was applied for, issued or served on either of those witnesses so far as this record shows. When the motion for new trial came on to be heard on March 7, 1914, among others on this ground, the court, it seems, heard evidence. What that evidence was is not shown by this record. The judge, in explaining the bills on the subject, among other things states, in effect, that Terrell did not live at Galveston but had lived at Temple, Texas, continuously for eight months before February 16, 1914; that on May 28, 1913, he had then told appellant he would remove from Galveston June 1, 1913. to Temple, Texas, where he would practice his profession as a doctor, and that if he wanted him as a witness he could notify him at Temple, Texas, and that he had removed, as he told appellant he would, and was at Temple during the time of his trial. The judge further shows that the testimony of Terrell would not have been material in this case, and in our opinion it was not. It was further shown that Miss Jones for several years continuously up to the time of this trial had been and was the stenographer of appellant; that for some years prior to his trial for said alleged rape she had been a member of his household and lived with him and his family; that soon after the trial in the rape case he had moved himself and family, including Miss Jones as one of them, to Houston, where he lived at the time he was indicted in this case, and that she was his stenographer at Houston during the whole time he had lived there. As stated, appellant had no process issued for Miss Jones. When he applied for process for her and the other witnesses on February 5, 1914, he did not procure the process, did not send or take it to any officer in Houston, Texas, to execute, did not see that it was issued and made no effort

whatever otherwise than merely to apply for said process, to see that it was issued or served. There can be no doubt that if he had used any diligence whatever to see that this process was issued and served on Miss Jones he could unquestionably have had it done and have procured her attendance. The judge states that the process which he had issued on February 16th to Houston for Miss Jones went into the hands of the sheriff of Harris County and was on that same day returned not served; that the sheriff had made inquiry at the residence of Mrs. Murff, appellant's wife; that she informed him that she had no information where Miss Jones was and had not seen her in some time; that the sheriff visited appellant's office and could get no information as to her whereabouts and "from the tone of Mrs. Murff's talk in reference to Miss Jones' whereabouts it appeared that she did not want the officer to find her." In our opinion no such diligence was used to procure the attendance of Miss Jones as to authorize or require the court to grant him a continuance because of her absence. The trial judge further said in explanation of the bill on this subject: "It is the opinion of the court, ascertained from the record in this cause, that if the defendant had really wanted this witness he could have had her to testify," and that is our opinion also, and we go to the extent of saying that from this record, it is our opinion that Miss Jones was absent by his consent and probably by his procurement.

The statute (art. 608, subd. 6, C. C. P.) says that no continuance "shall be granted as a matter of right." All applications are addressed to the sound discretion of the court. The application nor record otherwise shows that appellant made any effort, inquiry or attempt to find where Miss Jones was or have her to attend. He doubtless knew where she was all the time. His case was first called for trial February 16th, continued over for two days for him to get her, which he did not do. She was his employee and had been for years; he had no process whatever issued for her after the process which the court had issued for had been returned not served. The trial of the case lasted for several days,—from the record, we conclude it lasted six days.

When the Supreme Court had criminal jurisdiction, in Townsend v. State, 41 Texas, 134, that court said: "In applications (for continuances) addressed to the discretion of the court it must clearly appear that the continuance was improperly refused before the judgment will be reversed. Lewis v. Williams, 15 Texas, 48; Trammell v. Pilgrim, 20 Texas, 158; Burrell v. State, 18 Texas, 713."

This court, through Judge Willson, in Barrett v. State, 18 Texas Crim. App., 67, said: "An application for a continuance should set forth fully and distinctly the diligence used to obtain the absent testimony, or such facts as will excuse the use of diligence; and it must appear that all the means provided by law were resorted to by the defendant to obtain the testimony, and were resorted to promptly, or that facts existed which excused him from exercising such diligence."

In Walker v. State, 13 Texas Crim. App., 618, p. 647, this court said: "We know of no rule of law which requires the State to show a want

of diligence in opposition to a continuance. It devolves upon the defendant to show affirmatively and distinctly that he has used all the diligence to obtain his witness required by law."

In Massie v. State, 30 Texas Crim. App., 64, this court, through Judge Davidson, said: "Neither will this court nor the trial court supply by inference and presumption allegations not contained in an application for a continuance which should be stated therein. The application must be complete within and of itself in order to require this court to say it was erroneously refused. Presumption, when indulged, will and must be in favor of the rulings of the court in reference to the matter complained of, and not against same."

In Long v. State, 17 Texas Crim. App., 128, this court said: "The onus is upon the defendant to establish the exercise of diligence in support of an application for a continuance. . . . The burden is upon the party seeking a continuance to show himself entitled to it, by definite, exact, and certain averments."

In Skipworth v. State, 8 Texas Crim. App., 135, this court said: "The law requires of a defendant a rigid compliance with the exact terms prescribed for such application, and if there is a lack of diligence apparent from the application *or otherwise,* its mandate is inexorable and the trial must proceed."

In Mitchell v. State, 36 Texas Crim. Rep., 278, this court through Judge Hurt said: "It will be further observed that, although the trial in this case lasted four or five days, no effort was made to procure the attendance of any of the absent witnesses *after the trial began. For aught that appears, by the use of reasonable diligence, they could have been obtained in time to have testified in the case.* Counsel, however, insist that on the overruling of his motion for a continuance he was not able to do any more in the way of diligence, and, no matter if said witnesses were accessible, and could have been produced, that upon the overruling of his motion for a continuance the case was, as to that matter, in statu quo, and this court could not look beyond the time of the overruling of the application for a continuance as to the question of diligence. The statute places it in the discretion of the court to overrule a motion for a continuance, and then to re-examine the question on motion for a new trial, and to refuse a new trial, unless it should appear that the absent testimony was material, and probably true. *And we hold that it is perfectly competent for the court to look to the action of the appellant and his counsel after the overruling of a motion for continuance in passing upon the materiality or probable truth of the absent testimony.* Suppose, in a trial of this character, counsel were informed by the court that the witness was in town and could be had, and counsel should decline to ask for process to bring the witness before the court, or suppose that afterwards (as in the case of the witness Chancery) he should actually come into court, and appellant should decline to use him, would not the court be compelled to hold in such case that appellant was trifling with the court, that the

witness would not swear what was alleged, or else appellant did not regard the testimony as probably true? Such occurs to us to be the inevitable conclusion."

In Cantu v. State, 1 Texas Crim. App., 402, this court said: "The affidavit for continuance does not state the officer or person to whom, or at what time, said subpoenas were delivered. For aught that is shown from the record, the subpoenas may have been received by the person who returned them on the very eve of the trial. . . . This court, in the case of Murry v. State, 1 Texas Crim. App., 174, and in the case of Dill & Rice v. State, 1 Texas Crim. App., 278, has decided that it is not a sufficient showing for a continuance for a defendant to state in his application that he has had an attachment issued for a witness by whom he could prove material facts in his defense, without stating the date when the same was issued, and the officer to whom it was delivered, and at what time it was delivered to him. See, also, the cases of Townsend v. State, 41 Texas, 134; Van Brown v. State, 34 Texas, 186. In applications addressed to the discretion of the court it must clearly appear that the continuance was improperly refused before the judgment will be reversed. *Nothing is to be presumed in favor of an application for continuance, but the presumption must be that the party making it stated his facts as strongly as he could."*

In Buie v. State, 1 Texas Crim. App., 452, this court said: *"It has been repeatedly decided by this and the Supreme Court that it must be shown what was done with the process obtained for a witness; that it should be made to appear that it was placed in the hands of the proper officer if the witness resided in the county; and, if he resided out of the county, then that it was forwarded, and how and when, to the proper officer there."*

Somewhat soon after the trial began, the State introduced the court stenographer who took down appellant's testimony in the rape case. He identified his transcribing by question and answers, appellant's testimony therein. The matter as to the correctness of his report and transcribing his evidence was then somewhat thrashed out. The State then introduced the whole of that testimony as transcribed by the stenographer. Some time after this,—the exact time not shown, but it must have been at least one or two days after Murff's evidence was introduced,—the attorneys discovered that the stenographer had transcribed this answer: "Yes, I asked her to come *back* to the office on Monday morning," in answer to a question to him if he said anything to Viola Johnson about coming to his office on Monday, or any time thereafter. Several witnesses were introduced by appellant as to whether or not the word "back" was used by appellant as a part of his answer. The appellant contended that he had not used it. The appellant thereupon desired the court to suspend the trial in order for him to get the twelve jurors before the court and testify on the point. The appellant had already had the county attorney who tried the rape case, the trial judge in that trial, both attorneys for appellant, and the court stenographer to testify thereabout. One ground of his motion

for new trial was that the court committed reversible error in not postponing the trial and permitting him to send and get the twelve jurors in the rape case to testify on the point. The court, in allowing the bill on the subject, explains and qualifies it as follows:

"*It is not true,* as stated in the bill, *that the court had refused the defendant process for the jurors who tried the rape case.* It will be noticed by the court that defendant's attorney first took the stand voluntarily, and made his statement in regard to stenographer Evans' notes being incorrect, and then put Evans on the stand, and Mr. Evans said that, finding this language twice in his notes, he knew there was no mistake, although he had told Mr. Adams that he believed there was a mistake. *After the case had ended,* Mr. Adams desired that the court suspend trial, in order that he could get the twelve jurors into court, who were scattered in different parts of the county. *He didn't state that he had ever conversed with any of them, or that he had any idea what they would state,* although several witnesses had been examined after the testimony had ended. Process just before this time, had been asked for the witnesses. This case had taken an unusually long time to be tried, and *the court declined to allow Mr. Adams to send for witnesses, when he didn't know what their testimony would be,* and thus delay the case, and get the witnesses in in order to ask their independent recollection as to whether one word was used or not in Murff's testimony on the previous trial."

The appellant accepted that bill as thus qualified and is bound thereby. As explained and qualified by the court this shows no reversible error. Although it was two weeks later when appellant filed his amended motion for new trial, he attached no affidavit of any juror to show he would testify appellant did not use said word in his answer. Doubtless none of them would have so sworn.

The record shows that when the officer, Mr. Harston, first arrested appellant in the rape case that he asked him who had made the charge against him, and when informed by Mr. Harston that the probation officer, Mr. Lowry, had done so, he asked to be taken to Mr. Lowry so that he could discuss the matter with him. The officer complied with his request and took him to Mr. Lowry. Mr. Lowry's office was in the courthouse in Dallas. The court, over appellant's objections, permitted said officers Hartson, Lowry and Chick, each to testify fully what appellant had said to them about his acts and conduct with Viola Johnson. He was then under arrest in the rape case. The testimony of each of these officers was most damaging against appellant and it tended to establish and was amply sufficient to establish in connection with other testimony and with the testimony of Viola Johnson, that appellant did and said everything which he was alleged to have done and said and which he denied doing and saying which were made the basis of the charge of perjury against him in this case. His objections to all this testimony was that he was under arrest at the time in the rape case; that what they testified he said was not in writing; that he was not warned and, in fact, that it was a confession and could not be used

against him in this trial because thereof. The court explained and qualified the bills on this subject, among other things, as follows: "First: There was no complaint of duress in regard to this evidence except that the defendant was under arrest, he having sought Lowry for the purpose of having the conversation with him. Second: I do not think that section 810 of the statutes, in regard to warning applies to confessions or statements made by the defendant when a crime with which he is now charged had not been committed, and was not committed for several months afterwards. As I understand the statute, there is [no] a prohibition of the using of a confession made by a defendant except in compliance with the statute, in regard to the matter for which he was under arrest. Third: The language of the statute as to the warning is this: 'That the defendant does not have to make any statement at all; and that any statement made may be used against him on the trial of the offense concerning which the confession is made.' There is and there can not be a warning, under the statute, to the effect that a statement could be used against him in any subsequent crime that he might commit. Therefore, even if he had been warned, the warning could not be applied to this case of perjury. As I understand 'being under arrest' is statutory duress, and we are controlled by the terms of the statute."

The trial judge committed no error in permitting the testimony of these officers to be introduced. The question, we think, has already been thoroughly considered and decided by this court against appellant.

In Mathis v. State, 39 Texas Crim. Rep., 549, it was shown that Mathis was in jail on a charge of cattle theft. While therein he made certain threats against A. T. Wooten, who was a witness in the theft case. Also that while so confined he also made other threats to S. P. Clark against Wooten. Mathis was afterwards tried. Wooten was a witness against him. The jury convicted him and after the verdict had been returned he seized a chair and attempted to assault Wooten therewith. Thereupon he was indicted for an assault with intent to murder Wooten, convicted and his punishment assessed at two years in the penitentiary. The court in that case said: "The court explains the admission of this testimony by the statement that the offense for which the defendant was under arrest was a charge of cattle theft, and the offense for which defendant is now being tried had not been committed, and no charge made against him with reference thereto, and it was admissible and material to show motive and malice. Our statute regulating the admission of confessions evidently has reference to the offense for which the defendant was then held in custody. See Code Crim. Proc., art. 790. It has been held, however, that the confessions of defendant can be used against him, if made in accordance with said article, if such confessions relate to some past offense. We know of no case where statements, acts, or conduct of a defendant of a criminal character, while in jail, concerning an offense then being committed, or concerning some offense to be committed, have been excluded under this article. In Davis v. State, 19 Texas Crim. App., 201, it

was held that such evidence is admissible outside of the statute. To illustrate: Suppose A, a prisoner, should assault B, a fellow prisoner, while in jail; would the acts and conduct of A, including his declarations in connection with the offense, be excluded, because no warning had been given under the statute? Certainly not. Again, suppose A, the prisoner confined in jail, should assault B, the jailer, with a stick,— a weapon not necessarily deadly,—and should be subsequently tried for an assault with intent to murder, and the question should be whether or not the assault was made with the specific intent to kill; under these circumstances, would it be competent for the State to show by some fellow prisoner of A that prior to the assault he had stated that he intended to kill B, the jailer, and make his escape? We think that such testimony would be clearly admissible, without any infringement on said article of our Code of Criminal Procedure. We therefore hold that the court did not err in admitting said testimony." This Mathis case was expressly approved and a like holding had in Pate v. State, 46 Texas Crim. Rep., 483. The Mathis case was again expressly approved in Reinhard v. State, 52 Texas Crim. Rep., 59, and such testimony held admissible; and again approved and the doctrine stated as correct in Robinson v. State, 55 Texas Crim. Rep., 42; see also Miles v. State, 73 Texas Crim. Rep., 493, 165 S. W. Rep., 567.

What appellant said to these witnesses pertaining to his acts and conduct with reference to the rape charge against him could by no possible construction be considered a confession for the crime of perjury not then committed but committed months afterwards. The very definition of "confession" by all authorities excludes the idea of the future. It applies solely to the past.

Of course, the deputy clerk could testify that he was such official without producing his appointment, qualification, etc.

The court properly permitted the clerk to produce and identify the indictment in the rape case and to introduce it in evidence. And so he did in permitting the trial judge in the rape case to testify that he was the judge who presided in that trial and held the term of court when said trial occurred and that appellant was arraigned and pleaded not guilty in the rape case.

The court did not err in refusing to permit the appellant in the various ways he attempted, to prove that he was acquitted in the rape case. His acquittal or conviction therein was immaterial on his trial for perjury herein.

Appellant objected to the testimony of Viola Johnson in one bill, quoting fourteen typewritten pages, by questions and answers, of her testimony; and, in another bill, to that part of her testimony to the effect that appellant on January 19, 1913, took her in his automobile and to his office in the Wilson Building and there undertook to have sexual intercourse with her, and again on February 13th she was in his office in said building in the City of Dallas and that he laid her down on the floor and again had sexual intercourse, or attempted to do so, and that she was under fifteen years of age and not his wife. His

objections were on the theory that these matters were in controversy on the trial of the rape case and were res adjudicata and inadmissible on this. The court did not err in not excluding this evidence, over the objections made.

Among other witnesses the State introduced Mr. Kent, who was watchman in the Wilson Building wherein appellant had his office and being the same building wherein the indictment alleged appellant had committed the acts and said and done the things he denied, etc., as charged in the indictment herein. Appellant has two bills on this subject. In one he gives substantially, in a narrative form, the whole of the testimony of Mr. Kent comprising about seven typewritten pages. In the other he gives the whole of Mr. Kent's testimony by question and answer, embracing some nineteen typewritten pages. His objections to Mr. Kent's testimony, in effect, is that it was irrelevant and immaterial and did not tend to establish the charge against appellant herein, or in the original rape case, and that it could have no other purpose, except to inflame the minds of the jury against appellant. We have read appellant's bills and in our opinion the court properly overruled them. The testimony was admissible.

Appellant introduced several witnesses to prove up his general reputation for truth and veracity. Among them was Mr. Lemmon. In cross-examination, the State asked him if he investigated his moral qualities. The witness replied that he did, as well as his financial responsibility. The State then asked, "Did you know of his intimate relations with Miss Jones, his stenographer?" The appellant objected to this, the court sustained the objection, and the witness was not permitted to answer.

A somewhat like bill was that appellant introduced Mr. Wood, who testified to appellant's good reputation for truth and veracity, when the State, on cross-examination, asked him if he had not heard a great many people say that they had been defrauded in buying land from him. Wood replied he had never heard any such. Upon appellant's objection to all this, the court promptly sustained his objections and excluded it all. Neither of these matters show any reversible error.

By some of appellant's bills it is shown that he attempted to prove by various witnesses some specific acts of Viola Johnson, indicating perhaps intimacy with various men and that she had been arrested and convicted as a delinquent child. All this for the purpose of impeaching her.

It is well settled in this State that any witness can be impeached by showing a conviction within a reasonable time for any felony, or even any misdemeanor involving moral turpitude, but that in no event can testimony be introduced to prove guilt or specific acts for any such purpose. See sec. 868, Branch's Crim. Law, where some of the authorities are collated. The court permitted defendant, in his cross-examination of Viola Johnson, to ask her about all such matters but correctly did not permit proof by others of any such matters.

Appellant introduced his wife as a witness, who testified on direct

examination, that said Miss Jones was appellant's stenographer, had been for many years, lived with them as a member of their family, while they lived in Dallas. When she was turned over to the State for cross-examination she was asked questions about Miss Jones and her whereabouts. It may be that the State asked some questions on this line which possibly were not embraced in her direct examination. The appellant merely objected. It at first did not occur to the trial judge that the objections were made because the witness was appellant's wife and her testimony on direct examination did not go. to such an extent as to permit some of the questions asked her. As soon as the court was made aware that this was the ground of appellant's objection he at once stopped the cross-examination and specifically withdrew such testimony from the jury and instructed them not to consider it at all. In our opinion this presented no reversible error. It was of no material matter affecting the guilt or innocence of appellant and, even if improper, the action of the court, as explained in his qualification of the bill, shows it presents no reversible error. Miller v. State, 31 Texas Crim. Rep., 609; Hatcher v. State, 43 Texas Crim. Rep., 237; Robinson v. State, 63 S. W. Rep., 869; Trotter v. State, 37 Texas Crim. Rep., 468; Jones v. State, 33 Texas Crim. Rep., 7; Morgan v. State, 31 Texas Crim. Rep., 1; Sutton v. State, 2 Texas Crim. App., 342; Roberts v. State, 48 Texas Crim. Rep., 210.

Appellant made some objection to the court's charge. He also requested several special charges about various matters.

As shown, appellant's contention was that having been tried and acquitted in the rape case, he could not be tried in this case for perjury committed in the rape case; that it was putting him in former jeopardy and res adjudicata; that some of the testimony of some of the witnesses introduced on the rape case, could not be introduced on this, and that none of the testimony of the officers of his admissions, made while under arrest in the rape case, were admissible on the trial of this case. His objections to the court's charge and the special charges requested by him pertained to these matters. Appellant differed radically with the trial court on these questions. We think the trial court's theory of the law and the evidence was correct and that appellant's contentions thereabout were wrong. Hence none of these matters show any reversible error. The court's charge followed the law and the evidence in this case and was apt and full and correct, as made by the pleadings, the evidence and the law.

We have given this case and the questions raised a thorough investigation and study. No question raised by appellant presents any reversible error. Hence the judgment will be affirmed.

*Affirmed.*

DAVIDSON, JUDGE.—I dissent. The confession under arrest was not admissible, and there may be collateral questions also error. I do not care to write at length at present but can give reasons when rehearing is heard.

ON REHEARING.

December 31, 1914.

DAVIDSON, JUDGE.—On a previous day of this term the judgment herein was affirmed, the writer dissenting. Motion for rehearing calls in review the correctness of the majority opinion. The writer believed at the time of the affirmance that it should not have occurred, and a more careful review has more thoroughly convinced him of the correctness of his original opinion. As Judge Harper, after having investigated the matters involved, has arrived at the same conclusion, I proceed to briefly give the reasons why the motion for rehearing should be granted, and desire to discuss, first, the admission of the confession; second, the former acquittal or jeopardy.

Without stating in detail and with definite accuracy the matter with reference to the admission of the confession, I desire to state, in substance, the bill shows that under a previous charge of rape appellant was arrested, and while under arrest the officer stated that he made a confession with reference to the rape. He was tried before a jury on the charge of rape and acquitted. The indictment in this case charges him with perjury in that he testified, in substance, on the trial of the rape case that he did not have carnal intercourse with the girl alleged to have been assaulted. The details of his testimony are set out and traversed in this indictment, but it is deemed unnecessary to recapitulate it as it is quite lengthy. The testimony of the prosecutrix in the rape case was sufficient, if the jury believed it, to have convicted appellant. His testimony was a direct denial of her testimony, and thus the case went before the jury in the rape trial, with the result in his favor. When appellant made the alleged confessions, if he made such to the officers, he was under arrest, unwarned and the facts were not reduced to writing. Under all the authorities this evidence could not have been introduced against him in the rape case. The authorities are collated in Mr. Branch's excellent work on Criminal Law, where he thus states the rule: "Under the present statute, oral confessions made while defendant is in confinement, or in custody of an officer, are inadmissible, unless in connection with such confession defendant makes statement of facts or circumstances that are found to be true, which conduce to establish his guilt." The authorities are collated by Mr. Branch and are not here repeated. Now a confession must be in writing and show the statutory warning on the face of the confession. Even parol testimony or recitals in the officer's certificate will not supply the omission. See section 220 of Branch's Criminal Law for collated authorities. Since the amendment of the statute requiring confessions to be in writing and attested as the legislative act demands, verbal confessions can not be used when objections are interposed. 'If this were not true, the statutory rule would be useless and of no effect. The reason why written confessions are required in the place of oral confessions is too well known in Texas now to discuss. Here, the confessions were not reduced to

writing, the party was not warned, and it is not contended that by reason of the verbal confession any fact was discovered that was already known to the parties. The confession or admissions were made, however, with reference to rape and not perjury, and there is no claim, or shadow of claim, that they were part of the res gestae either of the alleged rape case or the charge of perjury. So we have the question of confessions, verbal in nature, made in regard to a rape transaction used in the trial of the perjury case. We would think the question was too well settled at this late day to require discussion, that confessions made in one case can not be used in another case under the circumstances shown by this bill of exceptions. There are quite a number of cases so holding in Texas. In Robinson v. State, 55 Texas Crim. Rep., 42, Judge Brooks, writing for the court, lays down the rule, that upon trial of horse theft, where it was shown that while the defendant was under arrest for another offense he made statements with reference as to how he obtained the horse for the theft of which he was being tried, the same were not admissible in evidence, citing quite a number of cases, among others, Davis v. State, 19 Texas Crim. App., 201; Taylor v. State, 3 Texas Crim. App., 387; Grosse v. State, 11 Texas Crim. App., 364; Neiderluck v. State, 21 Texas Crim. App., 320, and Carter v. State, 23 Texas Crim. App., 508. Other cases might be cited, but it is thought to be unnecessary. The question here raised was not solved by the decision in the case of Mathis v. State, 39 Texas Crim. Rep., 549, and that line of authorities. In this case the statement was with reference to a past transaction at the time it was made, otherwise it could not have been what we properly term a confession, and it was not res gestae. A confession, strictly speaking, must be with reference to some past transaction. A party can not make a confession of a future matter. Such statement could not be a confession. The confession might be brought so close to the immediate fact or the immediate act of the corpus delicti as to be at the same time a confession and res gestae. Under that state of case it might be used, although the party is under arrest, on the theory that it was a part of the res gestae, as was decided in Powers v. State, 23 Texas Crim. App., 42. This confession was made with reference to rape, and used in a perjury case growing out of the rape case. This was not permissible under any of the authorities, and it is deemed unnecessary to discuss that question further.

The second question, that is, appellant had been previously acquitted, was properly raised. The writer is of the opinion that this proposition should have been sustained. The rape case narrowed itself down to a conflict of the testimony between appellant denying the rape and the prosecutrix asserting appellant's guilt of that offense. The rape case seems to have been tried practically upon the testimony of these two witnesses, one affirming, the other denying. The jury acquitted appellant, taking his view of the case. The perjury assigned in the indictment could not be sustained without first having found that appellant's testimony in the rape case was false and the girl's testimony true. The jury adjudicating that question in the rape case found appellant's testimony

to be true and the girl's false. The question, therefore, as to that issue, had been definitely determined between the State of Texas and the defendant in his favor, and the two cases, rape and perjury, had so entwined themselves under the facts that the jury convicting appellant of perjury had necessarily to decide that he was guilty of the rape, and that his testimony denying it was false and the girl's assertion against his testimony was true. This was the very question adjudicated in the rape case and settled by that jury favorably to appellant. The State, like any other party, is bound by a judgment to which it is a party. We are freed from any trouble growing out of the doctrine of carving, as it is held to apply to the question of former conviction and former acquittal, because the rape case and this perjury case are founded on the identical facts. The rule then laid down in Simco v. State, 9 Texas Crim. App., 338, and Wright v. State, 17 Texas Crim. App., 152, have here no application. The doctrine of carving is not a part of this case, and could not be under the record. This question of jeopardy as here presented does not seem to be entirely a novel one. See Cooper v. Commonwealth, 51 S. W. Rep., 789; Petit v. Commonwealth, 57 S. W. Rep., 14; U. S. v. Butler, 38 Fed. Rep., 498; Coffey v. U. S., 116 U. S., 436, 29 L. Ed., 684; Shideler v. State, 16 L. Rep. Ann., 225. The latter is an Indiana case. The case of Cooper v. Commonwealth, supra, is very much like the present case. In that case the grand jury of Rowan County indicted appellant as living in adultery with Libbie Purvis. On the trial of the case he swore he had not had carnal intercourse with her. Upon this perjury was assigned. He was acquitted of the adultery case, and out of his testimony in that case grew the subsequent perjury prosecution. Quoting from that case we find this language:

"The principal question to be considered is the effect which is to be given to the indictment, trial, verdict and judgment of acquittal of appellant under the indictment for adultery, as it is manifest that appellant can not be guilty in this case if he was innocent of the charge contained in the other indictment. His guilt or innocence of the offense of having had carnal sexual intercourse with Libbie Purvis was the exact question which was tried in the first proceeding, and as a result of that trial the defendant was found not guilty. In order to convict him in this case, it was necessary for the jury to believe that he was guilty of the identical offense for which he had been tried and acquitted under the other indictment, as it is evident that, if he was innocent of having had carnal intercourse with Libbie Purvis, he was not guilty of false swearing when he stated that he had not had such intercourse with her. We therefore have as a result of the trial of appellant under these two indictments, a verdict and judgment finding him not guilty of the offense of having had carnal sexual intercourse with Libbie Purvis, and in the second case a verdict and judgment finding him guilty of false swearing when he testified that he had not had such intercourse with her; in other words, the first jury found him innocent of the misdemeanor with which he was charged, and the second jury found him guilty of a felony because he testified that he was not guilty of such

misdemeanor. It certainly was never intended that the enginery of the law should be used to accomplish such inconsistent results. It appears to us from the conflicting character of the testimony in the case upon the question of defendant's guilt or innocence that a verdict of the jury might have been upheld in the first case whether found one way or the other, but certainly the finding of the jury must be conclusive of the fact considered as against the commonwealth, and preclude any further prosecution which involves the ascertainment of such fact.

"A question analogous to the one at bar was considered in the case of Coffey v. United States, 116 U. S., 436, 29 L. Ed., 684, the facts in which case are about as follows: Coffey was a distiller, and was proceeded against under a section of the statute for defrauding, or attempting to defraud, the United States of the tax on spirits distilled by him, and the copper stills and other distillery apparatuses used by him and the distilled spirits found on his distillery premises were seized. One section of the statute provides, as a consequence of the commission of the prohibited act that this certain property should be forfeited, and that the offender should be fined and imprisoned. Coffey was first proceeded against on the criminal charge, and acquitted. Subsequently a proceeding to enforce the forfeiture against the res was instituted. The defendant in the proceeding in rem relied upon his acquittal under the criminal charge, and Judge Blatchford, in delivering the opinion of the court, said: 'Where an issue raised as to the existence of the act or fact denounced has been tried in a criminal proceeding instituted by the United States, and a judgment of acquittal has been rendered in favor of a particular person, that judgment is conclusive in favor of such person on the subsequent trial of a suit in rem by the United States, where, as against him, the existence of the same act or fact is the matter in issue, as a cause for the forfeiture of the property prosecuted in such suit in rem. It is urged as a reason for not allowing such effect to the judgment that the acquittal in the criminal case may have taken place because of the rule requiring guilt to be proved beyond a reasonable doubt, and that on the same evidence, on the question of preponderance of proof, there might be a verdict for the United States in rem. Nevertheless, the fact or act has been put in issue, and determined against the United States, and all that is imposed by the statute as a consequence of guilt is a punishment therefor. There could be no new trial of the criminal prosecution after the acquittal in it.' And the conclusion reached in that case is in consonance with principles laid down by the United States Supreme Court in the case of Gelson v. Hoyt, 3 Wheat., 246, 4 L. Ed., 381. In the case of Rex v. Kingston, 20 How. St. Tr., 355, 538, the court held: 'The judgment of a court of concurrent jurisdiction, directly upon the point, is, as a plea, a bar, or, as evidence, conclusive, between the same parties, upon the same matter, directly in question in another court.' And in the case of United States v. McKee, 4 Dill., 128, the defendant had been convicted and punished under a section of the Revised Statutes for conspiring with certain distillers to defraud the United States by unlawfully removing distilled

spirits without the payment of taxes thereon. He was afterwards sued in a civil action by the United States, under another section, to recover a penalty of double the amount of the taxes lost by the conspiracy and fraud. The court held that the two alleged transactions were but one, and that the suit for the penalty was barred by the judgment in the criminal case. The decision was put on the ground that the defendant could not be twice punished for the same crime, and that the former conviction and judgment were a bar to the suit for the penalty. And Judge Van Fleet, in his Treatise on the Law of Former Adjudications (p. 1242, sec. 628), says: 'If there is a contest between the State and the defendant in a criminal case over an issue, I know of no reason why it is not res judicata in another criminal case'; citing a number of American decisions in support of the text. Appellant in this case had already been tried and acquitted of the offense of having had carnal sexual intercourse with Libbie Purvis, and the judgment in that case is res judicata against the commonwealth, and he can not again be put on trial where the truth or falsity of the charge in that indictment is the gist of the question under investigation.

"It therefore follows that appellant was entitled to a peremptory instruction to the jury to find him not guilty." Petit v. Commonwealth, supra, was by the same court decided as the case above quoted.

It is unnecessary, the writer thinks, to follow the line of authorities further. The reasoning of the court in Cooper v. Commonwealth, supra, the writer believes, lays down the correct doctrine. The matter between the State of Texas and the defendant was the guilt of the defendant in the rape case. The jury decided he was innocent, and acquitted him. To charge him with perjury in that case, he swearing exactly opposite what the girl swore, is but a retrial of the rape case under the perjury indictment. If he did not commit the rape, as the girl swore he did, he could not be guilty of perjury here as he was not guilty of rape in the other case. The issue was fairly and squarely presented, met and decided. The issue here is the same, the facts are the same, and to try him now under the perjury case would be but to try him a second time for the rape, alloting the punishment for perjury instead of rape. If he can be convicted of perjury in this case, if he should again take the stand and swear again he did not commit the rape as he swore on the trial of the rape case, then he can be prosecuted for the perjury committed in that case, and as often as the case comes in court it would follow on the same facts there can be an endless number of cases of perjury, for his testimony would be the same in each succeeding case to be followed by other indictments charging perjury.

There are other interesting questions in the case, one of which will be briefly noticed, that is, the motion to quash the indictment. Mr. Branch of counsel for appellant has filed a very able argument in support of the motion to quash the indictment, showing its invalidity to charge the offense in form and matters required by law. The writer believes under the authority of Wynne v. State, 60 Texas Crim. Rep., 660, and McCoy v. State, 43 Texas Crim. Rep., 606, and that line of cases, the indict-

ment is insufficient to charge the offense, on the line of reasoning contained in those cases. Perjury can not be charged on the main fact. Buller v. State, 33 Texas Crim. Rep., 551. Under the views of the writer the judgment ought to be reversed and the prosecution dismissed, but inasmuch as my brethren will not agree with me on the insufficiency of the indictment, it is ordered that the judgment of affirmance be set aside, the motion for rehearing granted, and the judgment reversed and the cause remanded.

*Reversed and remanded.*

PRENDERGAST, PRESIDING JUDGE.—I respectfully dissent.

HARPER, JUDGE (partly concurring and partly dissenting).—In concurring with Judge Davidson in granting the rehearing and reversing and remanding the case, I do not want to be understood as agreeing to that part of his opinion which holds that the plea of former jeopardy should have been sustained. On this question I concur in the opinion of Presiding Judge Prendergast. It is true that appellant had been acquitted of the crime of rape, and that a portion of the elements of that offense was that he had carnal intercourse with Viola Johnson, but another element of that offense was that the girl must have been under the age of fifteen years at that time. So the issue presented in the rape case was that appellant had intercourse with the girl when she was under fifteen years of age. Even though the jury found and believed in the rape case that appellant had had acts of intercourse with the girl, this would not have authorized his conviction of the crime of rape tried for that offense. So the issues in the perjury case and in the rape case were not the same,—in the rape case it was essential to prove that the girl was under fifteen years of age before a conviction could be had. In the perjury case no such allegation was made, nor was it necessary to make any such proof. Our court has frequently held that the evidence must be sufficient to show the *identity of the very acts or omissions which constitute the offense,* and the acts which constitute the offense for which the former acquittal was had must be the very acts which constitute the offense on trial. Kain v. State, 16 Texas Crim. App., 282; Hooper v. State, 30 Texas Crim. App., 412; Fehr v. State, 36 Texas Crim. Rep., 589; Morton v. State, 37 Texas Crim. Rep., 131. Again, it has been held that if the two indictments are so diverse as to preclude the same evidence from sustaining both, the jeopardy is not the same. Parchman v. State, 2 Texas Crim. App., 228; Stewart v. State, 35 Texas Crim. Rep., 174; Mercer v. State, 17 Texas Crim. App., 452. Mr. Branch in his work on Criminal Law, sec. 398, correctly states the rule to be: "Plea is not good if the evidence sufficient to support the second indictment would not have been sufficient to secure a legal conviction upon the first indictment," citing Lowe v. State, 4 Texas Crim. App., 34; Wilson v. State, 16 Texas Crim. App., 497; Kellett v. State, 51 Texas Crim. Rep., 641; Morgan v. State, 34 Texas Crim. Rep., 222, and numerous other cases. In the rape case convincing proof that appellant had had

intercourse with Viola Johnson would have been insufficient to sustain a conviction. In this case proof of that fact alone would be sufficient, and therein lies the distinction, which use is further illustrated by the opinion of Judge Hurt in the case of Nance v. State, 17 Texas Crim. App., 385. In that case appellant was tried under an indictment charging him with incest with Pauline Leitz. He was acquitted. An indictment was then returned charging him with incest with Pauline Seitz. He filed a plea of former acquittal. It was held not to be good, as evidence in the first case that he had carnal knowledge of Pauline Seitz would not have sustained a conviction under indictment alleging the name of the girl to be Pauline Leitz. The State having alleged the girl's name to be Pauline Leitz, had to prove not only that he had carnal knowledge of a girl but that her name was Pauline Leitz, and failing to make that proof, an acquittal followed, but this did not prevent an indictment for incest with Pauline Seitz, although it was the same girl intended to be alleged in the first indictment, and the evidence was identical, the witnesses the same, and the facts the same, except that the girl was named Pauline Seitz instead of Pauline Leitz.

As to the Kentucky case quoted from, Cooper v. State, 51 S. W. Rep., 789, if the Kentucky statute defines a single act of intercourse to constitute adultery under their code, there might be strength in the opinion. But if the Kentucky statute follows the Texas statute in defining the offense: habitual carnal intercourse, or intercourse with a woman while living with her, when one of them is married to some other person, then the Cooper case is without authority to sustain it, and should and will doubtless be overruled by the Kentucky court when their attention is called to what is necessary to prove to obtain a conviction in a case of adultery, and what would be necessary to prove on the sole issue of whether or not he had had a single act of intercourse with the woman alleged in the indictment.

In the Coffey case, 116 U. S., 438, cited, the only question decided is, that where the *act or fact* is the same, then the plea would be good. No one questions that rule, but in this case the act or fact is not the same, for mere proof of the fact that he had carnal intercourse with the girl, when he had sworn he had not, will sustain this conviction; while proof of that fact would not have sustained a conviction of rape, even though the jury believed such fact to be ever so true.

As to the other question, the admissibility of the statement or confession of appellant to or in the presence of Officers Harston, Lowry and Chick while under arrest charged with the offense of rape of Viola Johnson, on the trial for perjury growing out of his testimony on the trial for rape, is one to us of no little difficulty. We have carefully examined the text-books on evidence, and the decisions of our court, and the only one which seems inclined to hold such confession admissible on the trial for perjury is the case of Reinhardt v. State, 52 Texas Crim. Rep., 60. In that case Reinhardt made a statement while presumably in charge of an officer, tending to admit himself guilty of the crime of seduction. While with the officer he killed the girl whom he

was alleged to have seduced. On a trial for murder of the girl this court held it doubtful whether or not the facts showed the appellant was under arrest, but says, "the testimony was admissible even though he was under arrest," citing the case of Mathis v. State, 39 Texas Crim. Rep., 549. In the Reinhardt case, the case for which he was on trial, grew out of the case for which he was under arrest, and the court held that statements made by him about the *offense for which he was under arrest* were admissible, on the theory that it showed the motive of the appellant for killing the girl.

In the Mathis case, 39 Texas Crim. Rep., 549, and Davis v. State, 19 Texas Crim. App., 225, the statements were not about the case for which appellant was then under arrest, and we do not doubt the correctness of the opinion of the court in those cases, but we have been led to seriously doubt the correctness of the court's holding in the Reinhardt case, supra, for the statement admitted was a confession about a crime for which he was then under arrest. Article 810 of the Code of Criminal Procedure, as applicable to this case, is, "that the confession shall not be used, if, at the time it was made, the defendant was in jail or in the custody of an officer, unless made in the voluntary statement of accused in writing signed by him, which written statement shall show that he had been warned by the person to whom the same is made that he does not have to make any statement, and if he does do so, that the statement may be used in evidence against him on the trial for the offense concerning which the said confession is therein made."

In this case, there is no contention that the confession is in writing, or that appellant had been warned as required by law that the statement might be used as evidence against him. In the confession or statement, the officers testify that he stated in their presence that he had had carnal intercourse with the girl with her consent. No one contends that this confession was admissible against him on the trial for rape, for which he was then under arrest. On the trial for rape appellant swore that he had never had intercourse with the girl, and the charge for perjury was based on this statement, and the confession the officers testify appellant made to them while under arrest for rape was admitted in evidence to prove that his testimony on the trial for rape was untrue—to prove that he had intercourse with the girl. Our opinion is that the plain letter of the statute renders inadmissible the confession of a defendant *about the crime for which he is then under arrest in any case* for which he may thereafter be tried, but not statements made by him about matters for which he is *not then under arrest* about offenses not then committed. With the exception of the Reinhardt case, supra, we think this the clear distinction made in all our decisions. Taylor v. State, 3 Texas Crim. App., 397; O'Connell v. State, 10 Texas Crim. App., 567; Grosse v. State, 11 Texas Crim. App., 364; Neiderluck v. State, 21 Texas Crim. App., 320; Robinson v. State, 55 Texas Crim. Rep., 42. In the latter case it was sought to prove statements made by Robinson while under arrest. In the opinion it is said: "The defendant having objected to any of said statements on the ground that defendant was under arrest,

the district attorney contended that he had a right to show that the arrest was not for the theft of the horse in question, as bearing on the admissibility of the statement, and of the weight to be given to it, and it was admitted for this reason. No request was made by defendant to limit the testimony in the charge. This testimony was not admissible. In the case of Pate v. State, 46 Texas Crim. Rep., 483, and Mathis v. State, 39 Texas Crim. Rep., 549, 47 S. W. Rep., 464, we held that although appellant was under arrest, statements about transactions that subsequently took place were admissible, but it is not permissible to prove statements about crimes that had theretofore been committed although the party is not under arrest for the particular crime about which the statement is made."

In this case it was sought to prove statements or confessions of appellant about the offense for which *he was then under arrest* in a subsequent trial, for a different offense growing out of his testimony on the trial of the case for which he was then under arrest. It may be that appellant swore falsely on the trial for rape, but this can not be proven by confessions made about the rape when he was under arrest for rape. After a thorough study of the question, the statute and the decisions bearing thereon, we have arrived at the definite conclusion that the confessions of a defendant about the offense for which he is then under arrest, unless taken in accordance with the provisions of the statute, are inadmissible. That the Code has provided that such confessions are not competent testimony, and such testimony is no more admissible than evidence offered of any other incompetent witness under the law. In the cases of Milner v. State, 75 Texas Crim. Rep., 22, 169 S. W. Rep., 899; Wyres v. State, 74 Texas Crim. Rep., 28, 166 S. W. Rep., 1150, and Long v. State, 10 Texas Crim. App., 186, we held such testimony inadmissible in behalf of a defendant because the statute said the person making the statement was an incompetent witness at the time he made the statement, and if he is incompetent under the statute, under those cases, such testimony is incompetent also in behalf of the State, by virtue of the statute, unless the confessions come within the exceptions named in the statute.

Having arrived at this conclusion, we have concurred in the opinion granting a rehearing on this ground alone.

*Rehearing granted.*