**Kent James FULMER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 971–85.**

Court of Criminal Appeals of Texas, En Banc.

June 10, 1987.

---

James L. McNees, Jr., Dallas, for appellant.

Henry Wade, Dist. Atty. and Elizabeth L. Phifer, Kevin Chapman and George McElroy, III, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty. and Alfred Walker, First Asst. State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

MILLER, Judge.

Appellant was convicted by a jury of the offense of indecency with a child; the jury also assessed punishment at life imprisonment. On appeal to the Dallas Court of Appeals, appellant's conviction was reversed and the indictment filed against him was ordered dismissed in an unpublished opinion. *Fulmer v. State,* No. 05–84–01252–CR, delivered July 3, 1985. Both the District Attorney for Dallas County and the State Prosecuting Attorney petitioned this Court for discretionary review. We granted both petitions to determine whether the Court of Appeals erred in finding that appellant's right to a speedy trial was violated, and that the conviction violated his rights against double jeopardy.[1] We will reverse the decision of the Court of Appeals.

We will first address the State's contention that the Court of Appeals erred in finding that appellant had been denied a speedy trial. Relevant to our examination of this contention are the following procedural facts which are taken from the Court of Appeals' opinion:

October 30, 1983 Appellant was seen caressing the genitals and breast of Kim Ngo.

October 31, 1983 Appellant was arrested.

February 13, 1984 Appellant was indicted for aggravated sexual assault of Kim Nguyet.

February 17, 1984 State announced "ready."

February 24, 1984 Appellant agreed to several continuances [sic].

April 16, 1984 Appellant was reindicted for indecency with a child, namely Kim Nguyet.

April 20, 1984 State announced "ready."

June 18, 1984 Case was called for trial, both sides announced ready, and a jury is selected and sworn.

June 19, 1984 The indictment was presented to the jury, appellant pled "not guilty," testimony showed victim's true name to be Kim Ngo, not Kim Nguyet, and State rested. Appellant moved for an instructed verdict, which was granted. Jury found appellant "not guilty."

June 28, 1984 Appellant was reindicted for sexual contact with Kim Ngo.

July 2, 1984 State announced "ready."

July 5, 1984 Appellant filed his speedy trial motion.

August 3, 1984 The hearing was held regarding appellant's motion, which was denied by the trial court.

October 9, 1984 The trial began.

In disposing of appellant's contention that the State failed to afford him a speedy trial, the Court of Appeals first stated that time from February 24 to April 16, 1984 should be excluded from the time by which the State had to be ready according to Art. 32A.02, § 4(3), V.A.C.C.P. The Court further held that the State's announcement of ready with regard to the sexual assault

---

1. In its petition, the District Attorney for Dallas County presented five grounds for review, all of which were directed toward the Court of Appeals' findings with regard to the Speedy Trial Act, Art. 32A.02, V.A.C.C.P., and violation of appellant's rights against being placed in jeopardy twice for the same offense. The Prosecuting Attorney raised seven grounds for review, three of which were similar in substance to those raised by the District Attorney. The remaining four grounds concerned the constitutionality of the Speedy Trial Act. We granted review on all of the grounds raised by the District Attorney and the three similar grounds raised by the Prosecuting Attorney. Review was denied on the issues raised regarding the constitutionality of the Speedy Trial Act.

indictment carried forward to the second indictment since the facts indicated that only a single offense was committed.

Next, the Court of Appeals addressed the excludability of the time between June 19, when appellant was found not guilty under the indictment that failed to properly name the victim, and June 28, when the new indictment was issued which properly reflected the victim's name. The Court stated:

"Section 4(7) of Article 32A.02 excludes a period of delay if the charge is disposed of by a final judgment and the defendant is later charged with the same offense 'from the date ... of the final judgment to the date the time limitation would commence running on the subsequent charge had there been no previous charge.' In the instant case, appellant was in custody to answer for the offense for which he was charged and had been since October 31, 1983; therefore, the time limitations would commence running on June 19, 1984. TEX. CODE CRIM. PROC. ANN. art. 32A.02 § 2(a) (Vernon Supp. 1985). In *Durrough v. State*, 620 S.W.2d 134, 139 (Tex.Cr.App. 1981), the court of criminal appeals concluded that because Section 4, subsection (7) 'implies a continuing relationship between the time periods covered by the previous indictment and the subsequent one,' the exclusion of the period of delay from final judgment to the date the time limitations would begin to run on the later charge 'is designed to prevent abuse of the time limits by the State.' The defendant thus may include the time which elapsed under the first charging instrument in determining whether the defendant's speedy trial rights have been violated. Because the time begins to run when the accused is detained in custody to answer for the offense for which he is charged, the period from June 19 through June 28, the date appellant is

reindicted, is not excluded from the computation. The period from June 28 through July 2, the date the State announced ready on the third indictment, is also included in the computation. Thus, the State was not ready, within the meaning of the Speedy Trial Act, until 129 days after appellant's arrest." [Footnote omitted.]

*Fulmer*, supra, slip op. at 9–10. The Court of Appeals then found that appellant's motion for dismissal was improperly denied by the trial court.

We need not specifically address the Court of Appeals' determinations regarding the period of time from June 19 to June 28, 1984, since even if this time is included in the computations, the State was ready for trial within the 120 days required by the Speedy Trial Act. Initially, the Court of Appeals found that the State's announcement of ready under the first indictment carried forward to the subsequent two indictments. Since the propriety of this particular finding was not questioned in either of the two petitions, we make no specific holding with regard to its correctness and will merely accept it as a given in our time computations.[2]

■ With this, we may ascertain the periods of time within which the State had to be ready for trial:

| | |
|---|---|
| October 31, 1983 (appellant's arrest) to February 16, 1984 ............... | 109 days |
| February 17, 1984 (State's first announcement of ready) to June 19, 1984 (appellant found not guilty by directed verdict).................... | 124 days |
| June 20, 1984 (first day after finding of not guilty) to June 27, 1984 (day before third indictment was filed) .... | 8 days |
| June 28, 1984 (third indictment filed) to October 8, 1984 (day before trial was held)......................... | 103 days |
| | |
| TOTAL | 344 days |

The time from February 17 to June 19, 1984 (124 days) and from June 28 to Octo-

**2.** We do note that the Court of Appeals' finding on this issue is supported by recent caselaw. See *Behrend v. State*, 729 S.W.2d 717 (Tex.Cr. App.1986); *Whaley v. State*, 717 S.W.2d 26 (Tex. Cr.App.1986); and *Richardson v. State*, 629 S.W.2d 164 (Tex.App.-Dallas 1982, pet. ref'd). See also *Cunningham v. State*, 726 S.W.2d 151 (Tex.Cr.App.1987).

ber 8, 1984 (103 days) may be excluded since the State's first announcement of ready carried forward to the two subsequent indictments, as found by the Court of Appeals: 344 minus 124 minus 103 = 117 days. Thus, even when the time between the directed verdict and the filing of the third indictment is included, the State was ready within the time period required by the Speedy Trial Act. The Court of Appeals erred in finding otherwise and the State's grounds for review on this issue are sustained.

Next, we will address the Court of Appeals' disposition of appellant's double jeopardy claim, *viz:* that appellant's rights against double jeopardy were violated since the complainant's name was not correctly set out in the first two indictments and those indictments were not therefore void. Although not specifically stated, the Court of Appeals opinion implies that if the prior indictments for the same offense were not void, then if an acquittal is obtained on one of them, subsequent prosecution is barred.

The facts of the instant case are similar to those presented in *Escobar v. State,* 578 S.W.2d 139 (Tex.Cr.App.1979), which was not mentioned by the Court of Appeals. In *Escobar,* the defendant was charged with burglary. The indictment alleged that the complainant was Dan Weiderhold. The witness at trial testified that his name was Donald Ray Wiederhold, and that he had never been known by the name alleged in the indictment. This Court held that the two names, "Dan" and "Donald," were patently incapable of being sounded the same. As such, the indictment filed against the defendant and the evidence presented at trial were at fatal variance. Thus, the evidence was insufficient to support a conviction for burglary of Donald Wiederhold, and the defendant was acquitted.

In a footnote, this Court stated the following:

"We note that an acquittal on the charge of burglary of the residence of Dan Wiederhold would not bar a prosecution for the residence [sic] of Donald Wieder-

hold. We also note that a prosecution for the burglary of Donald Wiederhold's residence will not lie on the indictment in this case, in any event, but must be initiated by a separate accusation."

*Escobar,* supra at 140, fn. 1.

Similarly, in *Reynolds v. State,* 58 Tex. Cr.R. 273, 124 S.W. 931 (Ct.App.1910), also not referred to by the Court of Appeals, the defendant committed an assault upon one Liz Randles. The defendant had previously been tried for the same assault but was acquitted because of a variance in the name of the person alleged to have been assaulted. This Court stated that where there is an error in the name of the person assaulted set out in the charging instrument, and an acquittal is thereafter rendered, prosecution would not be barred for an assault upon the same person charged under the correct name.

In the instant case, the same complainant was the focus of each of the three indictments. The State, however, did not correctly set out her name in the first or second indictments, and the trial on the latter indictment resulted in an acquittal. The State then reindicted appellant using the complainant's correct name. Under the preceding authorities, we find that the acquittal entered in the prior trial, which was based upon an indictment which did not correctly set out the complainant's name, did not operate as a bar to appellant's prosecution under another indictment which correctly identified the complainant. We also note the comments of our brother Clinton in his concurring opinion and adopt them.

For these reasons, the Court of Appeals erred in reversing appellant's conviction. The State's grounds must be sustained.

The judgment of the Court of Appeals is reversed and the cause is remanded to that court for consideration of appellant's remaining grounds of error.

TEAGUE, J., dissents to the disposition of appellant's double

jeopardy claim for the reasons stated in the concurring and dissenting opinion that he filed in *Foster v. State*, 635 S.W.2d 710 (Tex.Cr.App.1982).

CLINTON, Judge, concurring.

Appellant contended in the Dallas Court of Appeals that he has been "twice tried for the same offense." The State argued, however, that "appellant was not placed in double jeopardy because he was not tried twice for the same offense," and also that "having moved for a directed verdict [appellant] was, therefore, responsible for the judgment against him." After distinguishing the cases relied on by the State, the Dallas Court reasoned that since "there was only one complainant whose name was incorrectly set out in the indictment" and "the prior indictments were not void or fundamentally defective," the trial court erred in not dismissing the last indictment against appellant on grounds of "former jeopardy." *Fulmer v. State* (Tex.App.—Dallas No 05–84–01252–CR, delivered July 3, 1985). Slip Opinion, pp, 1, 14, 15–17.

Thus the conclusion of the Dallas Court must be that the offense alleged in the indictment first tried to a jury verdict is the same offense alleged in the third indictment for purposes of a jeopardy analysis. On that point the opinion of this Court is content to discuss two prior decisions: *Escobar v. State*, 578 S.W.2d 139 (Tex.Cr.App 1979) (which is not a jeopardy case and cites no authority for the advisory opinion delivered in note 1, at page 140) and *Reynolds v. State*, 58 Tex.Cr.R. 273, 124 S.W. 931 (1910), which is a jeopardy case and does cite and describe one prior jeopardy decision, *Branch v. State*, 20 Tex.App. 599 (Ct.App.1886), to conclude:

> "So it would seem to follow that where there is a distinct, unquestioned error in the name of the person assaulted as set out in the information, and an acquittal

thereafter had, this would not bar prosecution for an assault under the correct name."

*Ibid.* (All emphasis is mine throughout unless otherwise noted.)

That a line of precedent has established the bare rule in Texas cannot be gainsaid, but thus far the opinions mentioned above, including *Branch v. State*, supra, have never identified any reason for it. In *Branch*, upon learning at trial that the victim of a theft was not Fabian Flores, as alleged, the State entered a nolle prosequi; another indictment alleged the victim to be Antonio Flores, a different person. Defendant pleaded jeopardy, which plea, the appellate court noted, was "supported by the facts" of the matter it had just set out. However, without elucidation the court held the plea "not good"—giving instead a string of citations beginning with several pages in Bishop Cr.L.Vol 1, and followed by a handful of cases from other jurisdictions. *Branch*, at 602–603. Thus the formulation is that provided by Mr. Bishop and other authorities.

The work cited is not readily available, but a close successor is, namely, 1 Bishop's New Criminal Law (1892). At pages 629–630 under § 1052, titled "1. Variance," from most of the cases cited in *Branch*, supra, Mr. Bishop finds that "a defendant, acquitted because of the variance [in name of victim], may be prosecuted on a new indictment in which the fact is truly stated," and continues, "2. The Test—is, whether if what is set out in the second indictment had been proved under the first, there could have been a conviction; when there could, the second cannot be maintained; when there could not, it can be."

Among other cases cited by Mr. Bishop are two from the former court of appeals: *Nance v. State*, 17 Tex.App. 385 (Ct.App. 1885), and *Ex parte Rogers*, 10 Tex.App. 655 (1881).*

The former is almost directly on point in the instant cause. The accused in *Nance* was first acquitted of incest with Pauline

---

* The latter is a habeas corpus proceeding to prohibit a second prosecution for forgery. Without passing on propriety of that procedure, the court held a plea in bar on account of double jeopardy could not be sustained under the general variance rule: the second charge must be for the same offense and the proof the same—question is whether the same evidence neces-

Leitz; he was then charged for incest with Pauline Seitz. Though the statutory offense was the same, the criminal act was the same and the victim was the same female, the court held acquittal as to Pauline Leitz did not bar the second prosecution as to Pauline Seitz—"names are neither the same nor *idem sonans*." *Id.*, at 388–389.

The holding in *Nance* was explained by Judge Harper, concurring in *Murff v. State*, 76 Tex.Cr.R. 5, 172 S.W. 239 (1914), *viz:*

> "[The plea of former acquittal] was held not to be good, as evidence in the first case that he had carnal knowledge of 'Pauline Seitz' would not have sustained a conviction under indictment alleging the name of the girl to be 'Pauline Leitz.' The state, having alleged the girl's name to be 'Pauline Leitz,' had to prove not only that he had carnal knowledge of a girl, but that her name was 'Pauline Leitz,' and, failing to make that proof, an acquittal followed, but this did not prevent an indictment for incest with 'Pauline Seitz,' although it was the same girl intended to be alleged in the first indictment, and the evidence was identical, the witnesses the same and the facts the same, except that the girl was named 'Pauline Seitz' instead of 'Pauline Leitz.'"

*Id.*, 172 S.W. at 250.

Manifestly in the instant cause "Kim Nguyet" is different from "Kim Ngo." The names are neither the same nor *idem sonans*. Proof of one will not prove the other. That trial on the indictment resulting in an acquittal is not void or fundamentally defective is of no moment. The offenses are not the same.

Therefore, as supplemented herein I join this part of the opinion of the Court correctly disposing of the reason for the decision of the Dallas Court of Appeals, and join the balance of the opinion.

sary to support second prosecution would have

supported the first. *Id.*, at 655–667.