**Ex parte Brenda Sue BAILEY et al., Appellants,**

v.

**The STATE of Texas.**

**Nos. 1220–01 to 1229–01.**

Court of Criminal Appeals of Texas.

Oct. 9, 2002.

George McCall Secrest, Jr., Houston, for Appellant.

Alan Curry, Assist. DA, Houston, for the State.

## OPINION

MEYERS, J., delivered the opinion of the Court in which KELLER, P.J., PRICE, HERVEY, and HOLCOMB, J.J., joined.

Appellants were charged with engaging in organized criminal activity resulting in a theft from the City of Houston. TEX. PEN.CODE ANN. § 71.02 (Vernon Supp. 2002). During trial, at the close of the State's evidence, appellants moved for an acquittal.[1] Appellants' motions were granted. The State subsequently secured a second set of indictments charging appellants with the offense of engaging in organized criminal activity resulting in a theft from Rick Collins. Appellants filed pretrial applications for writs of habeas corpus on the ground that the second set of indictments violated the prohibition against double jeopardy. The trial court denied the requested relief. The Court of Appeals affirmed. *Bailey v. State*, 44 S.W.3d 690 (Tex.App.-Houston [14th Dist.] 2001).[2] We granted appellants' petitions

---

1. Appellants, all co-defendants, were tried in a single trial.

2. Appellants also filed special pleas in which they asserted a former jeopardy claim. The trial court did not grant appellants' motions

and they appealed. When a defendant files a special plea, all issues of fact presented in the special plea are to be tried by the trier of fact on the trial on the merits. *Ex parte Apolinar v. State*, 820 S.W.2d 792, 793 (Tex.Crim.App. 1991). Courts of appeals do not have juris-

for discretionary review to determine whether a subsequent prosecution on the second set of indictments is jeopardy barred. We will affirm.

## I.

Appellants were employed by C & C Services, a construction company, to work as flagmen on several projects for which C & C Services had been hired by the City of Houston to complete. It was alleged that appellants were involved in a scheme of falsifying their time sheets. Appellants were indicted for engaging in organized criminal activity with theft as the underlying offense.[3] The City of Houston was named as the complainant.

diction over a special plea before a final judgment has been ordered. *Id.* at 794. Thus, the procedure for a special plea requires a defendant to be twice put to trial before the merits of his former jeopardy claim may be reached. *Id.* Since in the present case a final judgment has not been ordered, we do not have jurisdiction over appellants' special pleas. Accordingly, those cases are dismissed.

3. Appellants were charged as follows:

**BRENDA SUE BAILEY,** hereafter styled the Defendant, heretofore on or about **and between APRIL 28, 1995 and JANUARY 11, 1996,** did then and there unlawfully, with intent to establish, maintain and participate in a combination and in the profits of a combination, said combination consisting of Ralph F. Schnur, Charles Francis Coleman, John Allen Babin, Brenda Sue Bailey, and James Arnold Schnur, while a public servant, namely, an employee of Brazos County, commit the offense of theft, in that she did, pursuant to one scheme and continuing course of conduct, unlawfully appropriate property, by acquiring and otherwise exercising control over property, namely, money, owned by the City of Houston, hereafter called the Complainant, and the total value of the property appropriated was fifteen hundred dollars or more but less than twenty thousand dollars, with intent to deprive the Complainant of the property, and the property came into the Defendant's care, custody and control by virtue of the Defendant's status as a public servant.

**JOHN ALLEN BABIN,** hereafter styled the Defendant, heretofore on or about **[and] between OCTOBER 25, 1993, AND DECEMBER 21, 1996,** did then and there unlawfully, with intent to establish, maintain and participate in the combination and in the profits of a combination, said combination consisting of Ralph F. Schnur, Charles Francis Coleman, John Allen Babin, Brenda Sue Bailey, and James Arnold Schnur, commit the offense of theft, in that he did, pursuant to one scheme and continuing course of conduct, unlawfully appropriate property, by acquiring and otherwise exercising control over property, namely, money, owned by the City of Houston, hereafter called the Complainant, and the total value of the property appropriated was twenty thousand dollars or more but less than one hundred thousand dollars, with intent to deprive the Complainant of the property.

**JAMES ARNOLD SCHNUR,** hereafter styled the Defendant, heretofore on or about **and between OCTOBER 25, 1993, AND SEPTEMBER 29, 1995,** did then and there unlawfully, with intent to establish, maintain and participate in the combination and in the profits of a combination, said combination consisting of Ralph F. Schnur, Charles Francis Coleman, John Allen Babin, Brenda Sue Bailey, and James Arnold Schnur, while a public servant, namely, an employee of Harris County, commit the offense of theft, in that he did, pursuant to one scheme and continuing course of conduct, unlawfully appropriate property, by acquiring and otherwise exercising control over property, namely, money, owned by the City of Houston, hereafter called the Complainant, and the total value of the property appropriated was seven hundred fifty dollars or more but less than twenty thousand dollars, with intent to deprive the Complainant of the property, and the property came into the Defendant's care, custody, and control by virtue of the Defendant's status as a public servant.

**RALPH F. SCHNUR,** hereafter styled the Defendant, heretofore on or about **and between APRIL 19, 1995, and DECEMBER 21, 1996,** did then and there unlawfully, with intent to establish, maintain and participate in a combination and in the profits of a combination, said combination consisting of Ralph F. Schnur, Charles Francis Coleman, John Allen Babin, Brenda Sue Bailey, and James Arnold Schnur, while a public servant, namely, and employee of the City of Houston, commit the offense of theft, in that he did, pursuant to

A bench trial on the first set of indictments commenced on April 3, 2000. At trial, the State called Rick Collins, the owner of C & C Services, to testify. Collins explained that he would receive daily reports containing the names and the amount of time that each flagman worked. He issued paychecks based on these daily reports and was eventually reimbursed by the City of Houston.

Sharon Messa, a senior assistant attorney for the City of Houston was also called to testify by the State. She explained the differences among the contracts that existed between the City of Houston and C & C Services for the projects that were being worked on during the time period of the alleged offenses. C & C Services would first pay the flagmen and then later be reimbursed by the City of Houston in accordance with the terms of the contract. On cross-examination, Messa testified that she was not aware of any conditions in the contracts that would require the city to monitor checks written by C & C Services to the flagmen. In addition, she explained that under the terms of the City's contracts, if a subcontractor came to the City and said that he was not paid by the contractor, then aside from providing the subcontractor the name of the general contractor and bonding company, it could not provide any relief to the subcontractor.

Claude Hill, the director of the Operations Division within the City of Houston's Controller's Office, also testified that he would be unable to provide relief to a subcontractor who was not paid by the contractor.

At the end of the State's evidence, appellants filed motions requesting an acquittal. On April 7, 2000, the trial court granted appellants' motions and ordered acquittals with the following comments:

> After having reviewed the arguments of counsel and reading the brief, so that you all know for any curiosity, as I am listening to you all as the trial progresses, I make notes as to what I need to hear to satisfy the State's case. The second item was—well, first, was money misappropriated? I was able to answer that yes. The second item is, so whose money, the City's or the contractor's? Bad as it pains me to do it, I have to grant the motions based on the law. Each defendant is acquitted.

On April 13, 2000, appellants were indicted for engaging in organized criminal activity with theft as the underlying offense. However, instead of naming the City of Houston as the complainant, the State listed Rick Collins. Appellants subsequently filed special pleas of double jeopardy and applications for writs of habeas corpus in the trial court. The trial

once scheme and continuing course of conduct, unlawfully appropriate property, by acquiring and otherwise exercising control over property, namely, money owned by the City of Houston, hereafter called the Complainant, and the total value of the property appropriated was fifteen hundred dollars or more but less than twenty thousand dollars, with intent to deprive the Complainant of the property, and the property came into the Defendant's care, custody, and control by virtue of the Defendant's status as a public servant. **CHARLES FRANCIS COLEMAN,** hereafter styled the Defendant, heretofore on or about **and between OCTOBER 25, 1993, and DECEMBER 21, 1996,** did then and there un-

lawfully, with intent to establish, maintain and participate in a combination and in the profits of a combination, said combination consisting of Ralph F. Schnur, Charles Francis Coleman, John Allen Babin, Brenda Sue Bailey, and James Arnold Schnur, commit the offense of theft, in that he did, pursuant to one scheme and continuing course of conduct, unlawfully appropriate property, by acquiring and otherwise exercising control over property, namely, money, owned by the City of Houston, hereafter called the Complainant, and the total value of the property appropriated was twenty thousand dollars or more but less than one hundred thousand dollars, with intent to deprive Complainant of the property.

court conducted a hearing on applicants' motions. The State contended that not only was it alleging a different victim, but a different set of property as well since the money paid by the City of Houston to Rick Collins was different from the money paid by Rick Collins to the flagmen. Appellants argued that since the new prosecution would involve the same set of facts and the same witnesses, with the only difference being the name of the victim, the State should be barred from proceeding on the new charges against appellants. The trial court denied relief.

Appellants argued on appeal that double jeopardy prohibits the State from re-litigating the same offense with the same evidence of the same conduct by merely changing the identity of the owner. Relying on the facts of *Smotherman v. State,* 415 S.W.2d 430 (Tex.Crim.App.1967) the Court of Appeals concluded that the State was not barred from prosecuting appellants under the second set of indictments. We granted appellants' petitions for discretionary review to determine (1)whether "federal double jeopardy principles bar a second trial for the same offense after [a defendant is] acquitted if the State changes its theory as to who owned the property allegedly stolen"; and (2) whether "*Smotherman v. State,* 415 S.W.2d 430 (Tex.Crim.App.1967)[is] still good law under federal double jeopardy principles."

## II.

The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." This provision is applicable to the States through the Fourteenth Amendment. *See Brown v. Ohio,* 432 U.S. 161, 164, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). The Double

Jeopardy Clause "protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) (footnotes omitted). In the present case, we must determine whether re-indicting appellants for the same course of conduct while alleging a different victim constitutes a prosecution for the "same offense" for double jeopardy purposes.[4]

■ Appellants contend that since a separate offense is not created by merely changing the name of the complainant, prosecution under the second set of indictments is a violation of federal double jeopardy principles. Specifically, appellants argue:

A "separate offense" is not, somehow, magically created, which would warrant bypassing the protections of the Double Jeopardy Clause, by merely *changing the name of the complainant* in the accusatory pleading and, then once again, subjecting an individual to trial after previously being acquitted for allegedly participating in the *same* combination and in the profits of the *same* combination, pursuant to the *same* alleged scheme and continuing course of conduct by allegedly appropriating the *same* property by virtue of the defendant's *same* status as a public servant.

Based on the facts of appellants' case, we disagree.

■ Traditionally, courts in Texas have held that an acquittal because of a variance between the pleading and the proof does not bar reprosecution on a new charge alleging that version of the offense which

---

4. Although appellants were charged with engaging in organized criminal activity, the focus of this appeal is on the underlying offense, the theft.

the State's evidence proved in the first trial. 43 GEORGE E. DIX & ROBERT O. DAWSON, TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 31.233 (2d ed.2001). *See, e.g., Swindel v. State,* 32 Tex. 102, 103–04 (1869) (denying habeas relief to an appellant who claimed that he would twice be put in jeopardy if prosecuted for theft of a gelding since he had been previously discharged for theft of a horse when evidence at trial adduced a theft of a gelding); *Nance v. State,* 17 Tex.App. 385, 389 (1885) (concluding that an acquittal under an indictment for incest charging the appellant of having carnal knowledge of one Pauline Leitz did not bar prosecution under the second indictment alleging the name of the female to be Pauline Seitz unless proof that the appellant had carnal knowledge of Pauline Seitz would have supported the allegation that appellant had carnal knowledge of Pauline Leitz); *Reynolds v. State,* 58 Tex.Crim. 273, 274, 124 S.W. 931 (1910) (concluding that where there is a distinct error in the name of the person assaulted as set out in the information and the appellant is acquitted of the offense, a second prosecution for an assault upon the same person charged under the correct name is permitted). The rationale behind this rule was explained in *Fulmer v. State,* 731 S.W.2d 943 (Tex.Crim.App.1987) (Clinton, J., concurring) (opinion adopted by majority).

The appellant in *Fulmer* was charged with indecency with a child. The indictment named "Kim Nguyet" as the victim. Proof at trial, however, established the victim's name to be "Kim Ngo" and appellant was acquitted of the offense. We held that the acquittal, which was based upon an indictment that did not correctly set out the complainant's name, did not operate as a bar to prosecution under an indictment that correctly identified the complainant. In his concurrence, Judge Clinton explained the reason behind permitting the subsequent prosecution:

> Manifestly in the instant cause "Kim Nguyet" is different from "Kim Ngo." The names are neither the same nor *idem sonans.* Proof of one will not prove the other. That trial on the indictment resulting in an acquittal is not void or fundamentally defective is of no moment. The offenses are not the same.

*Id.* at 948 (Clinton, J., concurring).

█ The same rationale is applicable in the present case. Evidence that appellants stole money from Rick Collins would not sustain a conviction under the indictment alleging the victim to be the City of Houston. *See id.* at 947–48. In other words, proof of one will not prove the other. Thus, the offenses are not the same for double jeopardy purposes. *See id. at* 948.

Appellants further contend that the Court of Appeals' reliance on *Smotherman v. State* was misplaced in that *Smotherman* was not decided on double jeopardy grounds.

The appellant in *Smotherman* was initially charged with the offense of damage to property of another. The information named Charles Kenneth Quinn as the victim. *Smotherman,* 415 S.W.2d at 431. At trial, the evidence established that Clinton Fontenot, the appellant's stepfather, was in fact the owner of the automobile, and the appellant was therefore acquitted of the offense. The State subsequently filed a new information charging the appellant with damage to an automobile belonging to Clinton Fontenot. *Id.* at 430. Appellant filed a plea of former acquittal that was denied. Overruling the appellant's contention that his plea should have been sustained, we explained:

> In the case at bar, the information alleged wilful injury on the part of ap-

pellant to an automobile belonging to Clinton Fontenot. The evidence necessary to support the information in the case at bar would not have been sufficient to sustain a conviction upon the first information. . . .

The rule appears to be that if the name of the injured party in the two indictments or information is not the same, the plea of former acquittal is ordinarily bad on its face.

*Id.* at 431 (citations omitted). Although *Smotherman* was not decided on double jeopardy grounds, it is nevertheless based on the same rule that was announced in *Fulmer* and therefore is controlling.

Finally, appellants contend that under *Iglehart v. State,* 837 S.W.2d 122 (Tex. Crim.App.1992) the State is precluded from initiating a prosecution under the second set of indictments. Specifically, appellants rely on a footnote in *Iglehart* in which we stated:

> The dissent opines that our opinion will "allow successive prosecutions under every available choice." We disagree with the dissent's intimation that we have afforded the State carte blanche to engage in interminable prosecutions. Our opinion merely permits the State to successively prosecute a defendant for the discrete number of items stolen, asserting the requisite ownership in those items as permitted by law. The State is not, however, free to successively prosecute for the same *conduct* by merely alleging ownership in different individuals, as such prosecutions would violate the double jeopardy clause. Thus, by way of illustration, had the State prosecuted appellant for theft of the fur coat from Robert LaVaye (as possessor of the property), it could not have successively prosecuted appellant for the theft of the fur coat from Valerie LaVaye (as title owner of the property). Because

this would have constituted multiple prosecutions for the *same conduct* under *Grady v. Corbin,* inter alia, it would have been jeopardy barred.

*Id.* at 129 n. 7.

The appellant in *Iglehart* burglarized the home of Robert LaVaye. The items taken from the home included a pistol, a typewriter, a fur coat, and some stereo equipment. Robert was the owner of the pistol and typewriter, while his daughter, Valerie LaVaye who do not did not reside at her father's residence at the time of the theft, was the record owner of the coat and the stereo equipment. The appellant was initially charged with the misdemeanor theft of a pistol and typewriter from Robert LaVaye. *Id.* at 124. Three days later, the appellant was indicted for the felony theft of a fur coat and stereo equipment from Valerie LaVaye. *Id.* After entering a plea and being sentenced on the misdemeanor theft charge, the appellant filed an application of a writ of habeas corpus asserting that the felony theft prosecution would constitute double jeopardy. *Id.* at 124–25. We held that there were two "owners" and that each appropriation constituted a separate offense. *Id.* at 127.

Appellant's reliance on the above quoted footnote is misplaced. *Iglehart* was decided while *Grady v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990) was still good law. In *Grady,* the United States Supreme Court held that "the Double Jeopardy Clause bars any subsequent prosecution in which the government, to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted." 495 U.S. at 521, 110 S.Ct. 2084. Our conclusion that the State would be prohibited from initiating successive prosecutions against the appellant was based on the "same conduct" test that was

promulgated in *Grady*. Because *Grady* has since been overruled by *United States v. Dixon*, 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993), the footnote on which appellants rely is inapposite and we decline to rely on it here.

Finding no reversible error, we affirm the judgment of the Court of Appeals.

KEASLER, J., filed a dissenting opinion in which JOHNSON, J., joined.
WOMACK and COCHRAN, J.J., not participating.

KEASLER, J., filed this dissenting opinion in which JOHNSON, J., joined.

### *OPINION*

I dissent to the majority's conclusion that Bailey's prosecution is not barred by double jeopardy. (For simplicity's sake, I will refer to the Appellants as "Bailey," even though Brenda Sue Bailey was only one of the defendants.)

### I.

The Double Jeopardy clause of the Fifth Amendment "protects against a second prosecution for the same offense after acquittal." [1] As the majority notes, the issue in this case is whether this prosecution of Bailey, naming the City of Houston as the victim, constitutes prosecuting her for the "same offense" as the previous prosecution, in which C & C Services was the named victim. The majority begins its analysis with a peculiar line of Texas authority which holds that an acquittal based on a variance does not bar re-prosecution.

I will address this authority in turn, but I think the starting place in this case is federal double jeopardy jurisprudence.

The "cornerstone of double jeopardy jurisprudence" [2] on the issue of whether two prosecutions are for the "same offense" is *Ball v. United States*.[3] In *Ball*, three defendants were prosecuted for murder. One was acquitted, the other two were convicted. The judgments of the latter two were reversed because the indictments were defective for not alleging "when and where" the victim died.[4] The State then prosecuted all three again for the same murder. The prosecution which concerns us is the one against the defendant who had been previously acquitted.

The Supreme Court recognized the old English law that "[i]f any person, who is indicted for an offence, shall on his trial be acquitted upon the ground of a variance between the indictment and the proof, or upon any exception to the form or to the substance of the indictment, he may be arraigned again on a new indictment, and may be tried and convicted for the same offence, notwithstanding such former acquittal." [5] But the Court explicitly rejected this doctrine as being "unsatisfactory in the grounds on which it proceeds, as well as unjust in its operation upon those accused of crime." [6] The Court emphasized that the Fifth Amendment's "prohibition is not against being twice punished, but against being twice put in jeopardy; and the accused, whether convicted or acquitted, is equally put in jeopardy at the first trial." [7] The Court quoted at length from

---

**1.** *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969).

**2.** 5 LaFave et al, Criminal Procedure § 25.3(b) (2d ed.1999).

**3.** 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896).

**4.** *Id.* at 664, 16 S.Ct. 1192.

**5.** *Id.* at 669, 16 S.Ct. 1192.

**6.** *Id.*

**7.** *Id.*

the dissent in *People v. Barrett*[8] which explained that the State should not get a second chance at a prosecution simply because it erred in its first indictment. This was characterized as "present[ing the] novel and unheard-of spectacle of a public officer, whose business it was to frame a correct bill, openly alleging his own inaccuracy or neglect as a reason for a second trial, when it is not pretended that the merits were not fairly in issue on the first."[9] The Court concluded that, "[h]owever it may be in England, in this country a verdict of acquittal, although not followed by any judgment, is a bar to a subsequent prosecution for the same offense."[10]

*Ball* governs today's case. Bailey was acquitted, and the State now seeks to prosecute her for the same offense, this time alleging a different victim. Under *Ball*, this prosecution is barred. The majority concludes that this is not the "same offense" because this indictment alleges a different victim. But *Ball* rejects the notion that making a minor change in an indictment creates a different offense. In *Ball*, the first indictment did not allege the "where and when" of the murder, and the second indictment did. This did not create a new offense. There was only one offense in *Ball*—the murder—regardless of the particulars of the second indictment as compared with the first.

There is not much authority to assist courts in determining whether a defendant is being prosecuted twice for the "same offense" under the same statute. Generally, courts analyze whether two offenses are the "same offense" under the *Blockburger*[11] test by determining whether each offense requires proof of an element which the other does not. But that test is only applicable when the defendant is prosecuted under two different statutes for the same conduct. It does not apply when, as here, the defendant is prosecuted twice under the same statute.

And the issue is even more confusing when considering multiple victims. The fact is, in some cases, two prosecutions based on two different victims will be permissible, while in other cases it will not. It depends on the facts of each case and whether those facts constitute one offense or two offenses.

We have held that, for double jeopardy purposes, the allowable unit of prosecution for robbery is each victim.[12] The same could be said for engaging in organized criminal activity by committing theft—the allowable unit of prosecution would be each victim. We have also held that "same offense" means the "identical criminal act."[13] Essentially, if there is one victim, there is one criminal act, and one offense; but if there are two victims, there are two offenses. For example, if Bailey had committed two thefts by stealing money from two entities, both the City of Houston and C & C Services, then there would be two victims in this case and therefore two offenses. The theft from one is not the "same offense" as the theft from the other. They are different offenses because there are two different victims.

But that is not this case. This case involves a single theft from a single victim,

8.  1 Johns. 66.

9.  *Ball*, 163 U.S. at 667, 16 S.Ct. 1192.

10. *Id.* at 671, 16 S.Ct. 1192.

11. *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

12. *Ex parte Hawkins*, 6 S.W.3d 554, 560 (Tex. Crim.App.1999).

13. *Ex parte Goodbread*, 967 S.W.2d 859, 860 (Tex.Crim.App.1998); *Luna v. State*, 493 S.W.2d 854, 855 (Tex.Crim.App.1973).

but the State alleged the incorrect victim in its first indictment. There is a single offense in this case. The theft from C & C Services is the "same offense"—the identical criminal act—as the theft from the City of Houston because there was no separate theft from the City of Houston. It was all one offense (though it occurred over a period of time and through multiple time sheets). This indictment, then, charges Bailey for the "same offense" for which she was already acquitted.

Another way of looking at it is to ask: Would we allow this subsequent prosecution if Bailey had been convicted, rather than acquitted, under the first indictment? Surely not. If Bailey had been convicted under the first indictment naming the City of Houston as the victim, a subsequent prosecution alleging C & C Services as the victim would no doubt be barred. This is because, again, there were not two victims in this case. There was one victim. The result should not be any different just because Bailey was acquitted. There was just one offense, and this indictment charges Bailey with that "same offense," regardless of who is named as the victim.

## II.

So federal double jeopardy principles bars this prosecution. But the majority allows it based on a peculiar line of authority from this Court. The majority finds this line of authority relevant because it characterizes Bailey's first trial as resulting in an acquittal due to a "variance."[14]

First, I disagree with the majority's characterization of Bailey's acquittal in the first trial as being based on a variance. I have previously noted the havoc that the word "variance" has caused in our case-law.[15] But even given the reality that variance law is here to stay, the fact is that not every acquittal or reversal due to insufficient evidence can rationally be characterized as a variance case. We have stated that "a 'variance' occurs when there is a discrepancy between the allegations in the charging instrument and the proof at trial."[16] While this broad definition covers the facts of this case, it includes too much. The word "variance" ought to be used to describe instances in which there is a minor discrepancy between the facts alleged and those proved, such as a difference in spelling, in numerical digits, or in some other minor way.[17] When the variance pertains to a person, the vast majority of the cases do not involve any dispute as to the identity of the person.[18] The person the State alleges is the same person as that which it proves, but the indictment contains a clerical error regarding that person's name.[19] Essentially, a variance case ought to refer to a case in which the State makes a minor clerical error in the indictment. Indeed, the Supreme Court's *Ball* opinion says as much when it basically equates acquittals based on a variance with those based on an exception to the form or substance of the indictment.[20]

This case does not consist of a clerical or typographical error in the indictment—it involves a substantive failure in proof. In Bailey's first trial the State alleged the City of Houston as the owner but, according to the trial court, it proved that C & C

---

14.  *Ante*, op. at 126 – 127.

15.  *Gollihar v. State*, 46 S.W.3d 243, 260–62 (Tex.Crim.App.2001) (Keasler, J., concurring & dissenting).

16.  *Gollihar*, 46 S.W.3d at 246.

17.  *See, e.g.,* Appendix A.

18.  *Id.*

19.  *Id.*

20.  *See Ball*, 163 U.S. at 669, 16 S.Ct. 1192.

Services was the owner. The "City of Houston" and "C & C Services" are not even remotely similar. They are not similarly spelled. They are not the same institution. They are not even the same type of institution, one being a government entity and the other being a private business. The majority states that the fact that the victims in this case were "two different people" does not distinguish it from other variance cases,[21] but I disagree. Rather than a clerical error in the indictment, this case involves a flaw in the State's investigation before trial and a substantive failure in proof at trial. I would not use the word "variance" to describe this type of insufficient-evidence case.

### III.

The majority's use of the word "variance" leads it to follow a line of authority in which we have indicated that an acquittal based on a variance does not bar reprosecution on a new indictment alleging that version of the offense that the State's evidence proved at the first trial.[22] I will refer to this as the "*Swindel* Rule" since *Swindel v. State*[23] seems to be the first case in which we articulated it. Because I don't believe this case involves a variance, I don't believe the *Swindel* Rule is even applicable. But assuming that Bailey's acquittal was due to a variance and the *Swindel* Rule applies, I believe the *Swindel* Rule is wrong. Besides being almost blatantly contradictory to *Ball v. United States*, the *Swindel* Rule also conflicts with more reasoned authority from this Court,

has been criticized by commentators, is poorly reasoned, and is unworkable.

### A.

First, it conflicts with *Ball*. As noted above, the Supreme Court in *Ball* specifically rejected the very notion on which *Swindel* is based.[24] The majority attempts to find the *Swindel* Rule constitutional by characterizing this prosecution as being for a different offense, but the Supreme Court recognized in *Ball* that a subsequent prosecution after an acquittal based on a variance was inherently for the "same offense"—merely changing the wording of the indictment does not create a new offense. The *Swindel* Rule and the majority's opinion do not survive under *Ball*. And even if this case is properly considered a variance case because this case involved poor drafting of the indictment, *Ball* plainly rejects the notion that a clerical error in the indictment relieves the State of the responsibility of complying with double jeopardy principles.[25]

### B.

*Swindel* also conflicts with more reasoned authority from our Court. Although our variance law is not a model of clarity, we recently re-affirmed in *Gollihar v. State*[26] that a variance will not result in a conviction's reversal unless it is material. I expressed my disagreement with that opinion at the time,[27] but the Court has spoken on the issue and *Gollihar* is law.

In *Gollihar*, the Court stated that a variance is material if it is "prejudicial to a

---

21. *Ante,* op. at 127.

22. *Ante,* op. at 127, citing 43 Dix et al, Criminal Practice and Procedure § 31.233 (2d ed.2001).

23. 32 Tex. 102, 103–04 (1869).

24. *See Ball,* 163 U.S. at 669, 16 S.Ct. 1192.

25. *See id.* at 667, 16 S.Ct. 1192.

26. 46 S.W.3d at 248–49.

27. *Id.* at 260–62 (Keasler, J., concurring & dissenting).

defendant's 'substantial rights.' "[28] The Court explained that, to determine whether a defendant's substantial rights are prejudiced, we consider "[1] whether the indictment ... informed the defendant of the charge against him sufficiently to allow him to prepare an adequate defense at trial, and [2] whether prosecution under the deficiently drafted indictment would subject the defendant to the risk of being prosecuted later for the same crime."[29] The important part of that statement for our purposes is part (2): A variance is material if a prosecution under the deficiently drafted indictment would subject the defendant to the risk of being prosecuted later for the same crime. Of course, *Gollihar* did not make this up. We said essentially the same thing many times before *Gollihar*, at least as far back as 1910 in *Rowan v. State*.[30] There we stated, "A variance is not now regarded as material unless it is such as might mislead the defense, or might expose the accused to the danger of being put twice in jeopardy for the same offense."[31] I'll call this the *Rowan* Rule.

So the Rowan Rule states that a material variance occurs when the defendant is at risk of being put twice in jeopardy for the same offense. But that runs directly contrary to the *Swindel* Rule. Under the *Swindel* Rule, if there is a material variance, the defendant will be acquitted, but he can be re-prosecuted. Under the Rowan Rule, if the variance is material and the defendant is re-prosecuted, then the defendant is put in jeopardy twice for the same offense, which violates double jeopardy.

Essentially, we have been articulating two different double jeopardy rules. The *Rowan* Rule is usually articulated in cases in which the conviction is affirmed because the variance is found to be immaterial.[32] In those cases, we generally reason that the variance was immaterial because there was no risk that the defendant would be re-prosecuted on a subsequent indictment for the same offense. In contrast, the *Swindel* Rule is usually mentioned in cases in which the conviction is reversed because the variance is material.[33] In that instance, we generally conclude that re-prosecution on a subsequent indictment for the same offense is permissible.

The two rules are not distinguishable under any theory that one of them involves cases involving a re-prosecution for a "different" offense while the other involves cases involving a re-prosecution for the "same" offense. In both Rowan cases and *Swindel* cases, the Court has faced the same issue regarding whether the subse-

28. *Id.* at 248.

29. *Id.*

30. 57 Tex.Crim. 625, 124 S.W. 668, 673 (1910).

31. *Id. See also Fuller v. State*, 73 S.W.3d 250 (Tex.Crim.App.2002); *Santana v. State*, 59 S.W.3d 187, 195 (Tex.Crim.App.2001); *Middleton v. State*, 476 S.W.2d 14, 16 (Tex.Crim. App.1972); *Martin v. State*, 152 Tex.Crim. 261, 213 S.W.2d 548 (1948); *Raven v. State*, 149 Tex.Crim. 294, 193 S.W.2d 527 (1946); *Jones v. State*, 115 Tex.Crim. 418, 27 S.W.2d 653, 656 (1930); *Davis v. State*, 88 Tex.Crim. 7, 224 S.W. 510 (1920); *Reyes v. State*, 81 Tex.Crim. 588, 196 S.W. 532, 535 (1917); *Zweig v. State*, 74 Tex.Crim. 306, 171 S.W. 747, 750 (1913); *Feeny v. State*, 62 Tex.Crim. 585, 138 S.W. 135, 138 (1911) (op. on reh'g).

32. *See, e.g., Fuller*, 73 S.W.3d at 254; *Santana*, 59 S.W.3d at 195; *Middleton*, 476 S.W.2d at 16; *Martin*, 213 S.W.2d at 548; *Raven*, 193 S.W.2d at 527.

33. *See, e.g., Fulmer v. State*, 731 S.W.2d 943 (Tex.Crim.App.1987); *Kinney v. State*, 67 Tex. Crim. 175, 148 S.W. 783, 783–84 (1912); *Branch v. State*, 20 Tex.App. 599 (Tex.Ct.App. 1886); *Nance v. State*, 17 Tex.App. 385, 388– 89 (Tex.Ct.App.1885); *Parchman v. State*, 2 Tex.App. 228, 241–42 (Tex.Ct.App.1877).

quent prosecution is for the "same offense." The two Rules have been applied in variance cases that are virtually indistinguishable. *Swindel* applied in *Nance v. State*,[34] where the variance was between Pauline Leitz and Pauline Seitz. But *Rowan* applied in *Reyes v. State*,[35] where the variance was between Modesta Espinosa and Modesta Espinosa. In either case, the question of whether re-prosecution under an indictment which correctly spelled the person's name constitutes the "same offense" for double jeopardy purposes ought to be answered the same; it either is the same offense in both cases or it is a different offense in both cases. And yet, the cases are treated differently.

## C.

Commentators agree with me that *Swindel* is flawed. The majority cites Professors Dix and Dawson's treatise as support for the *Swindel* Rule. But those professors do not endorse it. On the contrary, they explain that whether this rule "would survive attack based on federal double jeopardy law is problematic at best." [36] They indicate that the split Supreme Court in *United States v. Dixon*[37] would very likely unite in their opposition to "cases such as *Fulmer* where the State relies upon the same behavior of the accused as constituting the same statutory crime but seeks a second opportunity to convict because in the first proceeding its evidence failed to prove the version of the facts it chose to plead." [38] A contrary result allows the State "to prosecute the defendant for what is a different offense only in the narrowest technical sense." [39]

## D.

Moreover, *Swindel* itself is poorly reasoned. In *Swindel*, the defendant was charged with stealing a horse, but was discharged because the evidence showed that he stole a gelding instead.[40] The Court concluded that a discharge was essentially the same as an acquittal by a jury, and that double jeopardy did not bar re-prosecution for theft of the gelding because "[t]he theft of any one of the animals constitute a separate offense." [41] That is no doubt true, but the facts of *Swindel* reflected that the defendant stole only one animal, not two. The animal was a gelding, which, of course, is a type of horse. The *Swindel* Court reasoned that there were two separate offenses here because the statute distinguished between a gelding and a horse.[42] But the fact that the statute made that distinction does not mean that the defendant committed two offenses. The *Swindel* Court cited no authority for the proposition that the defendant could be prosecuted twice for stealing the same animal when the State "erred" in its initial indictment by alleging a horse instead of a gelding.

## E.

In addition, *Swindel* has recently demonstrated its unworkability in the face of double jeopardy law. In *Ex parte Coleman*,[43] we were forced to carve out a sig-

---

**34.** 17 Tex.App. 385.

**35.** 196 S.W. at 535.

**36.** DIX ET AL, *supra* at § 31.233.

**37.** *Id.*

**38.** *Id.*

**39.** *Id.*

**40.** 32 Tex. at 102–03.

**41.** *Id.* at 103.

**42.** *Id.* at 103–04.

**43.** 940 S.W.2d 96 (Tex.Crim.App.1996).

nificant exception to the *Swindel* Rule. In that case, the State first alleged that the defendant stole property from a person "unknown to the grand jury." The defendant was acquitted. The State then re-prosecuted him for the same offense, this time alleging Home Depot as the property owner. The defendant alleged that the subsequent prosecution violated double jeopardy, but the State argued it was permissible based on *Fulmer v. State*[44] and *Smotherman v. State*.[45] As the majority notes, *Fulmer* and *Smotherman* are both *Swindel* cases.

We agreed with the defendant.[46] We noted that in *Fulmer* and *Smotherman*, the State had "made a mistake in pleading the complainants."[47] We explained that "the State could retry the defendants in those cases for offenses committed against patently different people."[48] We distinguished *Coleman* because in that case we could "be certain that . . . [the defendant] was acquitted of the same offense in the first trial for which the State wants to try her in the second, though the first indictment stated that the complainant was unknown."[49]

The distinction between *Coleman* on the one hand and *Fulmer* and *Smotherman* on the other is not persuasive. Whether the State alleges the victim as a particular person whose name is misspelled, or as a person unknown to the grand jury, in either case, if the defendant is acquitted the

first time and then re-prosecuted under a corrected indictment, the defendant is prosecuted twice for the same offense. Moreover, the *Coleman* Court's characterization of *Fulmer* and *Smotherman* as permitting subsequent prosecutions "against patently different people" is misleading. Though *Smotherman* did involve a prosecution against a totally different person, *Fulmer* did not. And more importantly, the *Swindel* Rule has almost uniformly been applied in cases in which the second prosecution was plainly against the same person, not a completely different person.[50] *Smotherman* is in the minority in that regard.

Professors Dix and Dawson agree that "*Coleman*'s effort to distinguish situations involving allegations of matters unknown is not convincing."[51] They also note that *Coleman*'s approach is "the only reasonable one if the prohibition against double jeopardy is to be taken seriously."[52] The distinction between *Coleman* and *Swindel* is unpersuasive, and our need in *Coleman* to limit the *Swindel* Rule demonstrates the unworkability of that rule in the face of federal double jeopardy principles.

## F.

We should not lightly overrule precedent. But when one of our cases conflicts with Supreme Court authority, we have no choice but to overrule it.[53] *Swindel* con-

---

44. 731 S.W.2d 943.

45. 415 S.W.2d 430 (Tex.Crim.App.1967).

46. *Coleman*, 940 S.W.2d at 98.

47. *Id.* at 99.

48. *Id.*

49. *Id.*

50. *See, e.g., Fulmer*, 731 S.W.2d at 946; *Reynolds v. State*, 58 Tex.Crim. 273, 274, 124 S.W.

931 (1910); *Branch*, 20 Tex.App. 599; *Nance*, 17 Tex.App. at 388–89; *Parchman*, 2 Tex.App. at 241–42.

51. Dix et al, *supra* at § 31.234.

52. *Id.*

53. *See Hernandez v. State*, 988 S.W.2d 770, 771 (Tex.Crim.App.1999); *State v. Guzman*, 959 S.W.2d 631, 633 (Tex.Crim.App.1998). *See also Malik v. State*, 953 S.W.2d 234, 236 (Tex.Crim.App.1997).

flicts with *Ball v. United States*. Additionally, when precedent conflicts with a decision that is found to be more soundly reasoned, we may resolve the inconsistency in favor of the more soundly reasoned decision.[54] *Swindel* conflicts with *Rowan*, which is more soundly reasoned. Finally, if one of our decisions is poorly reasoned or unworkable, we should not follow it.[55] *Swindel* is poorly reasoned, and the fact that we have recently found it necessarily to limit it indicates its unworkability. We should not follow it today. If *Swindel* is applicable, then we should overrule it and, to the extent that they follow it, *Smotherman* and *Fulmer*.

## IV.

Again, I have my doubts as to whether this case even involves a variance. But if it does, then we should take this opportunity today to continue in our recent efforts to clarify variance law.[56] We now recognize that a variance is not material and should not result in a reversal unless the defendant was surprised.[57] We should today continue with the logical extension of that rule: if the conviction is reversed because of a material variance, or if a defendant is acquitted because of such a variance, then a subsequent prosecution for that same offense is barred by double jeopardy. And simply correcting the indictment error which resulted in the variance in the first place does not create a "new offense." To hold otherwise is to grant the State unlimited opportunities to prosecute an individual, and this cannot be what the Fifth Amendment means.

## V.

I would reverse the judgment of the Court of Appeals and hold this prosecution barred by double jeopardy. Because the majority concludes otherwise, I dissent.

**54.** *Awadelkariem v. State*, 974 S.W.2d 721, 725 (Tex.Crim.App.1998).

**55.** *Paulson v. State*, 28 S.W.3d 570, 571–72 (Tex.Crim.App.2000).

**56.** *See Gollihar*, 46 S.W.3d 243.

**57.** *Id.*

# APPENDIX A

| Case | State Alleged | State Proved | Found | Result | Comments |
|------|---------------|--------------|-------|--------|----------|
| Fuller v. State 73 S.W.3d 250 | Olen M. Fuller | Mr. Fuller & Buddy | Immaterial | Affirmed | Same person |
| Gollihar v. State 46 S.W.3d 243 | model number 135202 | model number 136203 | Immaterial | Affirmed | Same go-cart |
| Maldonad. v. State 998 S.W.2d 239 | Cruz C. Saucedo | Primo Correa Saucedo | Immaterial | Affirmed | Same person |
| Farris v. State 819 S.W.2d 490 | Rosenbalm & Rosebalm | Rosenbalm | Immaterial | Affirmed | Same person |
| Deltenre v. State 808 S.W.2d 97 | Dave Fondren, a peace officer | Dave Fondren, a jailer | Material | Reversed | Same person |
| Human v. State 749 S.W.2d 832 | cause number F-78-8690-IQ | cause number F7808690 | Immaterial | Affirmed | Same case; enhancement |
| Fulmer v. State 731 S.W.2d 943 | Kim Nguyet | Kim Ngo | N/A | Acquitted | Same person; Re-prosecution permitted |
| Huffman v. State 726 S.W.2d 155 | Black Hat Bar | Black Hat Saloon | Immaterial | Affirmed | Same bar |
| Freda v. State 704 S.W.2d 41 | bank robbery | conspiracy to commit bank robbery | Immaterial | Affirmed | Same case; enhancement |
| Gallegos v. State 635 S.W.2d 527 | Furr Food Store # 51 | Furr's Supermarket No. 51 | Immaterial | Affirmed | Same store |
| Herrera v. State 623 S.W.2d 940 | Pedro Ortiz Gabaldon | Pedro Gabaldon Ortiz | Material | Reversed | Same person |
| Cole v. State 611 S.W.2d 79 | Cause No. 87954 | Cause No. 87594 | Immaterial | Affirmed | Same case; enhancement |
| Hall v. State 619 S.W.2d 156 | indictment | information | Immaterial | Affirmed | Same case; enhancement |
| Keagan v. State 618 S.W.2d 54 | Brent Mezell | Brent Mizell | Immaterial | Affirmed | Same person |
| Cox v. State 608 S.W.2d 219 | Emma Dunn | Erma Dunn | Material | Reversed | Same person |

| | | | | | |
|---|---|---|---|---|---|
| McNeal v. State 600 S.W.2d 807 | Lena Mae Williams & William | Lena Mae Williams | Immaterial | Affirmed | Same person |
| Schneider v. S. 594 S.W.2d 415 | indictment ret'd July 19, 1972 | indictment ret'd August 7, 1972 | Immaterial | Affirmed | Same indictment |
| Carrillo v. State 591 S.W.2d 876 | Ken Bercaw | M. K. Bercaw, Jr. | Immaterial | Affirmed | Same person |
| Roach v. State 586 S.W.2d 866 | Cotton Nixon | Clarence Edward Nixon, Jr., Cotton | Immaterial | Affirmed | Same person |
| Escobar v. State 578 S.W.2d 139 | Dan Weiderhold | Donald Ray Wiederhold | Material | Reversed | Same person; FN approving re-prosecution |
| Armstrong v. State 573 S.W.2d 813 | 2/19/74 and 88-135 | 12/19/74 and 88-1135 | Material | Reversed | Same check |
| Grant v. State 568 S.W.2d 353 | Mary Harrington | Marion Harrington | Material | Reversed | Same person |
| Araiza v. State 555 S.W.2d 746 | C.D. Loop | Mrs. Loop & Leonard Ray Loop | Material | Reversed | Different people |
| Weaver v. State 551 S.W.2d 419 | Ruger | Luger | Material | Reversed | Same gun |
| Martin v. State 541 S.W.2d 605 | Dianna Lynch Sykes | Dina Jones Sykes | Immaterial | Affirmed | Same person |
| Plessinger v. State 536 S.W.2d 380 | Texas v. Plessinger | Arizona v. Plessinger | Immaterial | Affirmed | Same case; enhancement |
| Nitcholas v. State 524 S.W.2d 689 | Danny Davis | Denny Davis | Immaterial | Affirmed | Same person |
| Rowland v. State 523 S.W.2d 676 | F.M. 1632 | F.M. 1642 | Material | Reversed | Same road |
| Archie v. State 511 S.W.2d 942 | Respondik | Respondek | Immaterial | Affirmed | Same person |
| Ross v. State 496 S.W.2d 78 | Agular | Aguilar | Immaterial | Affirmed | Same person |
| Jenke v. State 487 S.W.2d 347 | Mahaffrey | Mahaffey | Immaterial | Affirmed | Same person |
| Moore v. State 480 S.W.2d 728 | Lester Hiney | Lester Heiny | Immaterial | Affirmed | Same person |

| | | | | | |
|---|---|---|---|---|---|
| Abbe v. State 469 S.W.2d 175 | Dennis Jones | Dennis R. Johns | Material | Reversed | Same person |
| Dears v. State 465 S.W.2d 376 | Richard Waldon | James Richard Walden | Immaterial | Affirmed | Same person |
| Hammond v. S. 465 S.W.2d 748 | Bill Herrington | Bill Harrington | Immaterial | Affirmed | Same person |
| Webster v. State 455 S.W.2d 264 | Mike Livezy | Mike Livezey | Immaterial | Affirmed | Same person |
| Jackson v. State 419 S.W.2d 370 | Orethia Stillman | Oretha Spearman | Material | Reversed | Same person |
| Smotherman v. State 415 S.W.2d 430 | Charles Kenneth Quinn | Clinton Fontenot | N/A | Acquitted | Different people; Re-prosecution permitted |
| Fowler v. State 379 S.W.2d 345 | Loraine Jones | Lorine Jones | Immaterial | Affirmed | Same person |
| Scott v. State 368 S.W.2d 216 | Clifford David Taplett, Jr. | Clifford Taplett | Immaterial | Affirmed | Same person |
| Pitt v. State 362 S.W.2d 117 | Sue Simpson | Reva Sue Simpkins | Material | Reversed | Same person |
| Raven v. State 193 S.W.2d 527 | Gale Zoder | Gale Zoda | Immaterial | Affirmed | Same person |
| Swindel v. State 32 Tex. 102 | horse | gelding | N/A | Acquitted | Same animal; Re-prosecution permitted |